United States District Court
Eastern District of North Carolina
Western Division

No. 5:23-cv-00506-m

| Siddhanth Sharma | Complaint for Declaratory Relief |
|---|---|
| v. | FRCP 3, 5.1 |
| Alan Hirsch, et. al | Local Rule 7.1(j) |
| | 42USC1983 |

FILED

SEP 1 4 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

Siddhanth Sharma

-Plaintiff

v.

Alan Hirsch (Chairman of NCBOE), Karen Bell, Jeff Carmon, Siobhan Millen, Stacey Eggers IV, Kevin Lewis – all in their Official Capacities; The State of North Carolina

-Defendants

## **COMPLAINT FOR DECLARARORY RELIEF**

Siddhanth Sharma

P.O. Box 937

Morrisville, NC, 27560

E-Mail : siddhanthsharma1996@yahoo.com

i

## QUESTIONS PRESENTED

1.) Does Defendant's (NC Board of Elections) requirement of Being a Registered Voter conflict with *Buckley* 525 U.S. 182, 194-95 and *Meyer* 486 U.S 414 as it adds an additional qualification than what is mandated in Article 1 Section 2 Clause 2 of the U.S. Constitution for U.S. House of Representatives?

2.) Does Defendant's requirement of Being part of a Political Party for 90 days conflict with *Dunn v Blumstein*, 405 U.S. 330 (1972) and adds an additional qualification than what is mandated in Article 1 Section 2 Clause 2 of the U.S. Constitution for U.S. House of Representatives?

3.) Does Defendants' requirement of banning "Active Felons" conflict with *Carrington v. Rash*, 380 U.S. 89 (1965) and adds an additional qualifications than what is mandated in Article 1 Section 2 Clause 2 of the U.S. Constitution for U.S. House of Representatives? In the event that Plaintiff is not an "Active Felon" Does Defendant's requirement of attesting to be a felon conflict with *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014) and adds an additional qualifications than what is mandated in Article 1 Section 2 Clause 2 of the U.S. Constitution for U.S. House of Representatives?

4.) Does the imposition of a Filing Fee, when Plaintiff is indigent, conflict with *Lubin v. Panish*, 415 U.S. 709 (1974) and adds an additional qualification for U.S. House of Representatives in North Carolina.

5.) Why does North Carolina have the same Candidacy form for State and Federal office which adds additional qualifications for U.S. House of Representatives whereas Florida and Virginia have separate forms for federal office? Would Appellant have to move to Virginia, Florida, etc. to seek the office of U.S. House of Representatives, as compared to North Carolina where he has been and will be denied?

6.) Does showing Plaintiff's and Registered Voters' addresses violate Plaintiff's 4th Amendment to privacy?

7.) If Plaintiff doesn't follow these additional qualifications will he be denied Ballot-Access for U.S. House of Representatives for the upcoming 2024 Midterms?

## **PARTIES TO THE PROCEEDING**

Siddhanth Sharma is the Plaintiff in the District Court The NC Board of Elections (NCBOE) are the Defendants in the District Court.

# TABLE OF CONTENTS

INTRODUCTION                                                          pg. 1

JURISDICTION                                                          pg. 2

STANDING                                                              pg. 3

PARTIES                                                               pg. 5

STATEMENT OF CASE                                                     pg. 7

REASONS FOR GRANTING COMPLAINT                                        pg. 8

PERMANENT INJUNCTION                                                  pg. 8

1.) ACTUAL OF SUCCESS ON THE MERITS                                   pg. 9

A.) BEING A REGISTERED VOTER IS A REQUISTE DEFENDANTS REQUIRE TO RUN

FOR U.S. HOUSE OF REPRESENTATIVES                                     pg. 9

B.) DEFENDANTS REQUIRE THAT CANDIDATES BE AFFILIATED WITH A POLITICAL

PARTY FOR A 90-DAY PERIOD                                             pg. 15

C.) DEFENDANTS DENY PLAINTIFF FROM COMING ON THE BALLOT DUE TO HIS

STATUS AS AN "ACTIVE FELON" – IN THE EVENT PLAINTIFF IS FOUND TO NO

LONGER BE "ACTIVE" DEFENDANTS UNCONSITTUTIONALLY SCRUTINIZE FELONS

FROM COMING ON THE BALLOT                                             pg. 18

PART 1                                                                pg. 18

PART 2                                                                pg. 24

D.) PLAINTIFF WILL BE BARREED FROM THE UPCOMING 2024 MIDTERMS DUE TO

INDIGENCY                                                             pg. 28

E.) THE PROBLEM WITH RUNNING AS AN UNAFFILIATED CANDIDATE            pg. 30

F.) INVASION OF PRIVACY BY DEFENDANTS                                 pg. 32

Case 5:23-cv-00506-M-BM   Document 1   Filed 09/14/23   Page 4 of 46

2.) IRREPARABLE HARM                                   pg. 33

3.) BALANCE OF EQUITIES TIPS IN APPELLANT'S FAVOR      pg. 34

4.) INJUNCTION IN THE PUBLIC INTEREST                  pg. 35

RELIEF/CONCLUSION                                      pg. 37

CERTIFICATE OF COMPLIANCE/SERVICE                      pg. 38

### CASELAW/TABLE OF AUTHORITIES

*American Constitutional Law Found. v. Meyer*, 120 F.3d 1092, 1100 (10th Cir. 1997)

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)

*Beautiful Struggle v. Baltimore Police Dep 't*, 2 F.4th 330, 346 (4th Cir. 2021)

*Buckley v. American Constitutional Law Foundation, Inc.* 525 U.S. 182, 194-95 (1999)

*Carrington v. Rash*; 380 U.S. 89 (1965)

*Clements v. Fashing*, 457 U.S. 957 at 986 (1982)

*Cook v. Gralike*, 531 U.S. 510 (2001)

*Cousins v. Wigoda*, 419 U.S. 477 (1975)

*Democratic Party of United States v. Wisconsin ex rel. La Follette*, 450 U. S. 123-124

*Dunn v. Blumstein*, 405 U.S. 330, 335 (1972)

*Gray v. Saunders*, 372 U.S. 368 (1963)

*Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U. S. 173 (1979)

v

*Kusper v. Pontikes*, 414 U.S. 51 (1973)

*Lubin v. Panish*, 415 U.S. 709 (1974)

*McCarthy v. Briscoe*, 429 U.S. 1316 (1976)

*Meyer v. Grant*, 486 U.S. 414 (1988)

*Newcomb v. Brennan*, 558 F. 2d 825, 828 (7th Cir. 1977)

*Newsom ex rel. Newsom v. Albemarle Cty. Sch. Bd.*, 354 F. 3d 249, 261 (4th Cir. 2003)

*Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987)

*Storer v. Brown*, 415 U.S. 724, 745-746 (1974)

*Tashjian v. Republican Party*, 479 U.S. at 224 (1986)

*United States Term Limits v. Thornton*, 514 U.S. 779 (1995)

*Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981)

*Williams v. Rhodes*, 393 U.S. 23 (1968)

*Winter v. Nat. Res. Def Council*, 555 U.S. 7, 20 (2008)

**STATUTES/RULES**

**U.S. CONSTITUTION**

Article I Section 2 Clause 2

Article I Section 4 Clause 1

Article I Section 5 Clause 1

Article VI Clause 2

1st Amendment

14th Amendment

**NC CONSTITUTION**

Article VI, Section 2 Clause 3

Article VI Section 8

**FRCP**

FRCP 3

FRCP 5.1

**Local Rule**

7.1(j)

**Federal Statute**:

42USC1983

28USC1391

28USC1651

28USC2201

28USC2202

28USC2403

28SC1331

28USC1343

**NC General Statute:**

NCGS 13-1

NCGS 163-55

NCGS 163-82.1(C)

NCGS 163-82.4

NCGS 163-106

NCGS 163-106.1

NCGS 163-106.2

NCGS 163-106.5

NCGS 163-107

NCGS 163-122

NCGS 163-127.3

NCGS 163-275

## **RELEVANT MATERIAL** [1A]

Denial of Voter Registration 9-13-23      [2A]

Florida and Virginia Candidacy Form      [3A-6A]

Plaintiff's Active Status      [7A]

Other Inmate's Status      [8A-9A]

Plaintiff's Restoration of Rights      [10A-11A]

Plaintiff's Court Fees      [12A]

NC Board's Response in Separate Lawsuit      [1B-32B]

Alamance 12      [33B-36B]

Lanisha Bratcher      [37B-41B]

Voting Statistics      [42B-46B]

NCBOE Response      [47B-49B]

Post-Election Audit      [50B-54B]

## **OTHER MATERIAL** [1D]

Esther Salas' Son Killed in Home      [2D-6D]

NC House Candidate's House Shot Up      [7D-8D]

Sen. McConnell's House Vandalized      [9D-12D]

Pennsylvania Candidate Assaulted at Home      [13D-19D]

Paul Pelosi Assaulted at Home      [20D-26D]

No.

| Siddhanth Sharma | Complaint for Declaratory Relief |
| --- | --- |
| v. | FRCP 3, 5.1 |
| Alan Hirsch, et al. | Local Rule 7.1(h), (j) |

1

2

3

4 **INTRODUCTION**

5     Plaintiff has announced Candidacy to run for U.S. House of Representatives in District

6 13 of North Carolina for the upcoming 2024 Midterms

7 https://www.fec.gov/data/candidate/H4NC13090/ .

8     Plaintiff has been Denied to be a Registered Voter on account of him being an "Active

9 Felon" [2A] yet he was restored all his rights on 3rd September 2023 [10A-11A]. Being a

10 Registered Voter is a requisite to running for Federal Office, at least in North Carolina [36C-

11 37C]. This causes a significant harm on his ability to campaign as Plaintiff is being denied

12 Ballot-Access. What is guaranteed is if Plaintiff does not comply with the Candidacy Form he

13 will be denied Ballot-Access and this denial of being a Registered Voter makes it so.

14     Defendants' Candidacy Form [36C-37C] imposes 4 additional qualifications for U.S.

15 House of Representatives than what is mandated in Article 1 Section 2 Clause 2 of the U.S.

16 Constitution which are 1.) Being a Registered Voter 2.) Affiliated with a Political Party for 90

17 Days 3.) Denying Felons from the ballot or in the case of ex-felons making them Attest to Felony

18 Conviction and criminally penalizing those who refuse to attest and subsequently deny ballot-

19 access and 4.) Imposing a filing fee to which Plaintiff cannot pay due to indigency. There is also

20 a separate argument where Defendants reveal Registered Voters' addresses and since being a

21 Registered Voter is a requisite to running for Federal Office Plaintiff believes it is a violation of

22 Plaintiff's 1st, 4th, 5th, 14th Amendment Rights.

1

1        Plaintiff reverently requests this Court for a Permanent Injunction to ORDER Defendants

2    to require a separate Candidacy Form for Federal Office, as the current one applies to both State

3    and Federal Office and adds additional qualifications for U.S. House of Representatives, U.S.

4    Senate, and even the Presidency.

5        Plaintiff reverently requests this Court for a Permanent Injunction to rule NCGS 163-107

6    unconstitutional; and ORDER Defendants to either 1.) Adopt a form for Candidates who cannot

7    pay the filing fee, due to indigency, or 2.) abolish the filing fee requirement for the offices of

8    U.S. House of Representatives and U.S. Senate. See *Lubin v. Panish*, 415 U.S. 709 (1974).

9        Plaintiff reverently requests this Court to rule unconstitutional Defendants' action of

10    revealing Registered Voters' addresses as violative of Plaintiff's 1st, 4th, 5th, 14th, Amendment.

11                                  **JURISDICTION/VENUE**

12    This Court retains jurisdiction pursuant to 42USC1983, 28USC1391 28USC1651, 28USC2201,

13                       28USC2202, 28USC2403 28SC1331, 28USC1343.

14        Pursuant to FRCP 5.1 Plaintiff is questioning the statutes NCGS 13-1, NCGS 163-55,

15    82.1(c)(2), 82.4, 96, 106(a), 106(b), 106(e), 106.1, 106.2, 106.5(a) 106.5(b), 107, 127.3 et seq,

16    275, and Article 6 Section 2 and 8 of the NC Constitution [9C-10C, 15C-31C, 33C-34C, 38C] as

17    they violate The 1st, 14th, Amendment of the U.S. Constitution, Article I Section 2 Clause 2,

18    Article I Section 4 Clause 1, Article I Section 5 Clause 1, Article VI Clause 2 of the U.S.

19    Constitution [2C-8C] - only pertaining to running for U.S. House of Representatives.

20        Venue is proper because Plaintiff lives in Wake County, Defendants' Organization is also

21    in Wake County.

22        Federal courts are courts of limited jurisdiction, meaning that a federal court is

23    empowered only to consider certain types of claims. *Home Buyers Warranty Corp. v. Hanna*,

2

1  750 F.3d 427, 432 (4th Cir. 2014). A federal court has subject matter jurisdiction over civil cases

2  "arising under the Constitution, laws, or treaties of the United States," or over civil cases in

3  which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which

4  diversity of citizenship exists between the parties. 28 U.S.C. §§ 1331, 1332.

5  "Subject matter jurisdiction cannot be forfeited or waived, and can be raised by a party,

6  or by the court *sua sponte*, at any time prior to final judgment." *In re Kirkland*, 600 F.3d 310,

7  314-15 (4th Cir. 2010) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

8  The burden of establishing subject matter jurisdiction is on the party asserting its

9  existence. See *US ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009) (citing

10  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

11  A federal court's jurisdiction is limited by Article III of the United States Constitution to

12  "cases" and "controversies." U.S. Const. art. III, § 2. "The doctrine of standing gives meaning to

13  these constitutional limits by identifying those disputes which are appropriately resolved through

14  the judicial process." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 207 (4th Cir. 2017)

15  (internal brackets, quotation marks and citations omitted).

16  "The Ex Parte Young doctrine allows suits for declaratory and injunctive relief against

17  government officials in their official capacities—notwithstanding the sovereign immunity

18  possessed by the government itself." *Vann v. U.S. Dep't of the Interior*, 701 F.3d 927, 929 (D.C.

19  Cir. 2012); see also *Ex Parte Young*, 209 U.S. 123 (1908).

20  **STANDING**

21  "To establish standing, a plaintiff must show: (1) an injury in fact; (2) a sufficient causal

22  connection between the injury and the conduct complained of; and (3) a likelihood that the injury

23  will be redressed by a favorable decision." *Wikimedia Found. v. Nat'l Sec. Agency/ Cent. Sec.*

3

1     *Serv.*, 14 F.4th 276, 281 (4th Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S.

2     149, 157-58 (2014))

3         An injury in fact must be "concrete"-that is, " real, and not abstract." *TransUnion LLC v.*

4     *Ramirez*, 141 S. Ct. 2190, 2204, 210 L. Ed. 2d 568 (2021) (quoting *Spokeo, Inc. v. Robins*, 578

5     U.S. 330, 340 (2016)). "An allegation of future injury may suffice if the threatened injury is

6     certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony*

7     *List*, 573 U.S. at 158 (internal quotation marks and citation omitted).

8         But a plaintiff seeking relief in federal court must first demonstrate that he has standing

9     to do so, including that he has "a personal stake in the outcome," *Baker v. Carr*, 369 U. S. 186,

10     204 (1962), distinct from a "generally available grievance about government," *Lance v. Coffman*,

11     549 U. S. 437, 439 (2007) (per curiam). That threshold requirement "ensures that we act as

12     judges, and do not engage in policymaking properly left to elected representatives."

13     *Hollingsworth v. Perry*, 570 U. S. 693, 700 (2013).

14         A lower standing barrier for First Amendment cases follows from the notion that

15     violations of the First Amendment impact "[s]ociety as a whole." Therefore, litigants "are

16     permitted to challenge a statute not because their own rights of free expression are violated, but

17     because of a judicial prediction or assumption that the statute's very existence may cause others

18     not before the court to refrain from constitutionally protected speech or expression." *Sec'y of*

19     *State of Md. v. Munson Co.*, 467 U.S. 947, 956-957 (1984).

20         The Fourth Circuit "-along with several other circuits-has held that ' standing

21     requirements are somewhat relaxed in First Amendment cases,' particularly regarding the injury-

22     in-fact requirement." *Davison v. Randall*, 912 F.3d 666, 678 (4th Cir. 2019), as amended (Jan. 9,

23     2019) (quoting *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013)). Here, Plaintiff alleges (1)

4

1  he has a First Amendment right to run for U.S. House of Representatives in District 13 of North

2  Carolina for the 2024 Midterms, (2) a North Carolina statute permitting challenges to his

3  candidacy pursuant to an inapplicable section of the U.S. Constitution infringes on that right, and

4  (3) he seeks declaratory and injunctive relief. Therefore, Plaintiff "must establish an ongoing or

5  future injury in fact." *Kenny v. Wilson*, 885 F.3d 280, 287-88 (4th Cir. 2018) (citing *O 'Shea v.*

6  *Littleton*, 414 U.S. 488, 495-96 (1974)). The Supreme Court has recognized that an Article III

7  injury may be sufficient for standing purposes by the threatened enforcement of a law. Susan B.

8  Anthony List, 573 U.S. at 158-59. " When an individual is subject to such a threat, an actual

9  arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." Id.

10  at 158 (citing *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that [ a

11  plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute

12  that he claims deters the exercise of his constitutional rights.")). The Supreme Court has

13  "permitted pre-enforcement review under circumstances that render the threatened enforcement

14  sufficiently imminent"; specifically, the Court has "held that a plaintiff satisfies the injury in-fact

15  requirement where he alleges [ 1] 'an intention to engage in a course of conduct arguably affected

16  with a constitutional interest, but proscribed by a statute, and [2] there exists a credible threat

17  of prosecution thereunder." Id. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298

18  (1979)).

19  **PARTIES**

20       Plaintiff Siddhanth Sharma lives in Wake County and has declared to run for U.S. House

21  of Representatives in District 13 of North Carolina for the 2024 Midterms.

5

1    Defendant Alan Hirsch is sued in his official capacity as the Chair of the North Carolina

2    Board of Elections ("NCBOE"). He is responsible for the administration of the NCBOE,

3    executing the Candidacy Form, and challenges to the Candidacy Form.

4    Defendant Mr. Jeff Carmon is sued in his official capacity as a member of the NCBOE.

5    He is responsible for the administration of the NCBOE, executing the Candidacy Form, and

6    challenges to the Candidacy Form.

7    Defendant Stacey Eggers IV is sued in his official capacity as a member of the NCBOE.

8    He is responsible for the administration of the NCBOE, executing the Candidacy Form, and

9    challenges to the Candidacy Form.

10    Defendant Karen Bell is sued in her official capacity as Executive Director of the

11    NCBOE. She is responsible for the administration of the NCBOE, executing the Candidacy

12    Form, and challenges to the Candidacy Form.

13    Defendant Kevin Lewis is sued in his official capacity as a member of the NCBOE. He is

14    responsible for the administration of the NCBOE, executing the Candidacy Form, and challenges

15    to the Candidacy Form.

16    Defendant Siobhan O'Duffy Millan sued in her official capacity as a member of the

17    NCBOE. She is responsible for the administration of the NCBOE, executing the Candidacy

18    Form, and challenges to the Candidacy Form.

19    Defendant The State of North Carolina is responsible for the creation of the statutes that

20    Plaintiff challenges.

21

22

23

6

## STATEMENT OF THE CASE

- Plaintiff intends to run for U.S. House of Representatives in District 13 of North Carolina for the 2024 Midterms in a partisan primary as a Republican.

  https://www.fec.gov/data/candidate/H4NC13090/

- On 13th September 2023 Plaintiff was denied to become a Registered Voter on account of being an "Active Felon" [2A] yet he completed his Parole on 3 September 2023 and had all rights restored [10A-11A].

- Plaintiff is Indigent. Plaintiff was granted to proceed *in forma pauperis* in the 4th Circuit in Case No. 23-1535 which deals with the same issues, minus the Filing Fee requirement and the invasion of privacy, presented to this Court.

- Due to Indigency, Plaintiff cannot pay the filing fee of $1740.00 dollar. *See* NCGS 163-107.

- The Candidacy Form for Federal *and* State Office is the same [36C-37C], at least in North Carolina, and adds additional qualifications for Federal Office such as 1.) Being a Registered Voter 2.) Being Affiliated With a Political Party for 90-days and 3.) Not Being a Felon 4.) Requiring a filing fee.

- The act of becoming a Registered Voter, which is a Requisite for Federal Office, invades Plaintiff's privacy as it displays his address for anyone to see on

  https://vt.ncsbe.gov/reglkup/

- The Candidate Filing Period runs from 4th December 2023 – 15th December 2023.

  https://www.ncsbe.gov/candidates/running-office

# REASONS FOR GRANTING RELIEF

## PERMANENT INJUNCTION

_Standard of Review:_

A party seeking a permanent injunction must demonstrate " actual success" on the merits, rather than a mere "likelihood of success" required to obtain a preliminary injunction. _Mayor of Baltimore v. Azar_, 973 F.3d 258, 274 (4th Cir. 2020), cert. granted sub nom. _Cochran v. Mayor & City Council of Baltimore_, 141 S. Ct. 1369, 209 L. Ed. 2d 118 (2021 ), see also _Winter_, 555 U.S. at 32 ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.") (quoting _Amoco_, _supra_). The party must demonstrate (1) "it has suffered an irreparable injury"2; (2) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and ( 4) "the public interest would not be disserved by a permanent injunction." Id. (quoting _eBay Inc. v. MercExchange, L.L.C._, 547 U.S. 388, 391 (2006)).

"The appropriate standard governing constitutional challenges to specific provisions of state election laws begins with the balancing test that the Supreme Court first set forth in _Anderson v. Celebrezze_, 460 U.S. 780, 789 (1983).

"Constitutional challenges to specific provisions of a State's election laws therefore cannot be resolved by any "litmus paper test" that will separate valid from invalid restrictions. _Storer_, supra, at 415 U. S. 730. Instead, a court must resolve such a challenge by an analytical process that parallels its work in ordinary litigation. It must first consider the character and

8

1 magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments

2 that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put

3 forward by the State as justifications for the burden imposed by its rule. In passing judgment, the

4 Court must not only determine the legitimacy and strength of each of those interests, it also must

5 consider the extent to which those interests make it necessary to burden the plaintiff's rights.

6 Only after weighing all these factors is the reviewing court in a position to decide whether the

7 challenged provision is unconstitutional. (citations omitted)." *Anderson* at 789.

8

9 ## 1.) ACTUAL SUCCESS ON THE MERITS

10

11 ## A.) BEING A REGISTERED VOTER IS A REQUISTE DEFENDANTS REQUIRE TO

12 ## RUN FOR U.S. HOUSE OF REPRESENTATIVES

13 On September 13, 2023 Plaintiff has been denied to be a Registered Voter on

14 account of him being an "Active Felon" [2A] though he regained his voting rights on 3rd

15 September 2023 [10A-11A]. On the Candidacy Form [36C-37C] it requires one to be a

16 Registered Voter in order to run for U.S. House of Representatives. Due to Plaintiff's status as a

17 Felon and NCGS 13-1, NCGS. 163-55, 82.1(c)(2), 82.4, 96, 106(a), 106(b), 106(e), 106.1, 106.2,

18 106.5(a) 106.5(b), 127.3 et seq, 275, as well as Article VI, Section 2 Clause 3 of the NC

19 Constitution, Article VI Section 8 of the NC Constitution [13C, 15C-31C, 33C-34C, 9C-10C]

20 Plaintiff has and will be denied as well as penalized for trying to be a Registered Voter [2A].

21 NCGS 163-55(a)(2), 106, 106.1, 106.5(a) and (b) [15C, 21C-22C, 23C, 25C] says that you can't

22 be a candidate if you are not a Registered Voter therefore the "Strict Scrutiny" test under

23 *Anderson* is appropriate.

9

1    There is no doubt that if one fails to become a Registered Voter on cannot run for Federal

2    Office, at least in North Carolina. *See* NCGS 163-106.5(a), (b) [25C]. This requirement of being

3    a Registered Voter undoubtedly adds an additional qualification to run for U.S. House of

4    Representatives than what is mandated in Article 1 Section 2 clause 2 of the U.S. Constitution. If

5    Plaintiff lived in Virginia or Florida he wouldn't be having this problem as they use separate

6    forms for state and federal office [3A-6A]. As we made clear in *U. S. Term Limits*, "the Framers

7    understood the Elections Clause as a grant of authority to issue procedural regulations, and not as

8    a source of power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to

9    evade important constitutional restraints." 514 U. S., at 833-834; see also *Cook v. Gralike*, 531

10   U.S. 510, 523 (2001).

11        *Kusper v. Pontikes*, 414 U.S. 51 (1973) is highly instructive if not identical. In *Kusper* a

12   voter was barred by an Illinois statute that did not allow her to switch parties and forced her to

13   remain in a party for 23 months. The Supreme Court ruled in her favor and ruled the Illinois

14   Statute unconstitutional. Likewise in Plaintiff's case he intended to run as a Republican

15   Candidate for the 2024 midterms. Yet due to his status as an "Active Felon" [2A] it is unknown

16   when he will regain his voting rights. It seems Plaintiff is being denied to be a Registered Voter

17   based on the inability to pay Court Fees [12A], to which he is indigent. S*ee* NCGS 13-1 [13C];

18   *CSI v. Moore*, 331PA21 pg 53 *et seq*. If this Court would look at Appendix A [7A] the Court

19   would see that Plaintiff's status is still active though parole is terminated. Comparing Plaintiff's

20   status with other inmates [8A-9A] this Court would see that both inmates' statuses are inactive.

21   Regardless of what the reason is for Petitioner's denial of being a registered voter : what *can* be

22   determined is that this is a mistake that should not be happening. These problems are not

23   supposed to be a part of the political process to where Plaintiff can be restricted by state-

10

1  agencies, especially in the middle of campaigning. These hurdles are adding additional

2  qualifications for U.S. House of Representatives. Whether this is caused by human error or

3  whatever the case may be Plaintiff should not be burdened with these requirements as it pertains

4  to running for U.S. House of Representatives. The only requisites that Plaintiff is required to

5  follow is 1.) Be 25 years old 2.) Be Affiliated with a Political Party for 90 Days 3.) Be an

6  inhabitant of North Carolina – Plaintiff reiterates that if he lived in either Florida or Virginia he

7  would not be suffering these problems as those states have separate forms for Federal Office.

8  Must Plaintiff move to those states to seek the same office he seeks in North Carolina? "*But if*

9  *they are, in fact, [felons], . . . they, as all other [felons], have a right to an equal opportunity for*

10 *political representation. . . . 'Fencing out' from the franchise a sector of the population because*

11 *of the way they may vote [or whether the person is a felon] is constitutionally impermissible.*"

12 *Blumstein at 355. "Section 1971(a)(1) provides that "[a]ll citizens of the United States who are*

13 *otherwise qualified by law to vote . . . shall be entitled and allowed to vote at all . . . elections,*

14 *without distinction of race, color, **or previous condition of servitude** . . . .the prohibitions of §*

15 *1971 encompass practices which have only an indirect effect on the worth of a citizen's vote in*

16 *addition to those which directly affect the ability to cast a vote." Washington v. Finlay*, 664 F. 2d

17 at 926.

18          There is no reason to be a Registered Voter if one is to be the candidate voted in. "*The*

19 *registration requirement has a discriminatory effect. It bars persons who are not registered*

20 *voters from [running for U.S. House of Representatives], thereby excluding that group of*

21 *persons from participating in core political speech. See Meyer, 486 U.S. at 421-22, 108 S.Ct. at*

22 *1891-92. The mandatory exclusion of unregistered [voters/candidates] also limits the number of*

23 *voices to convey the proponent's message, limiting the audience the proponents can reach.*

11

1  *Consequently, we apply exacting scrutiny.* [Defendants] *fail to identify a compelling state*

2  *interest to which its registration requirement is narrowly tailored. Because* [Defendants]

3  *requirement that [candidates for U.S. House of Representatives] be registered voters is not*

4  *narrowly tailored to a compelling state interest, we find it unconstitutionally impinges on free*

5  *expression and reverse the district court.*" *American Constitutional Law Found. v. Meyer*, 120

6  F.3d 1092, 1100 (10th Cir. 1997). "*The requirement that [candidates for U.S. House of*

7  *Representatives] be not merely voter eligible, but registered voters, it is scarcely debatable given*

8  *the uncontested numbers decreases the pool of potential [candidates] as certainly as that pool is*

9  *decreased by the prohibition of [candidates]. Both provisions 'limi[t] the number of voices who*

10 *will convey [the initiative proponents'] message' and, consequently, cut down 'the size of the*

11 *audience [proponents] can reach.'*" *Meyer*, 486 U.S., at 422, 423. In Plaintiff's case, as in

12 *Meyer*, the requirement "imposes a burden on political expression that the State has failed to

13 justify." Id., at 428. See *Buckley v. American Constitutional Law Foundation, Inc.* 525 U.S. 182,

14 194-95 (1999). "*The ease with which qualified voters may register to vote, however, does not lift*

15 *the burden on speech at petition circulation time. Of course there are individuals who fail to*

16 *register out of ignorance or apathy. See post, at 219-220. But there are also individuals for*

17 *whom, as the trial record shows, the choice not to register implicates political thought and*

18 *expression.*" *Buckley* at 195-96.

19        In *Meyer v. Grant*, 486 U.S. 414 (1988) the Supreme Court ruled that it was

20 unconstitutional to criminalize pay to Petition Circulators. Likewise it is unconstitutional to

21 criminalize the right to vote as it relates to being a requisite to run for U.S. House of

22 Representatives. "*The statute burdens such speech in two ways: First, it limits the number of*

23 *voices that will convey appellees' message and the hours they can speak and, therefore, limits the*

1    *size of the audience they can reach. Second, it makes it less likely that appellees will garner the*

2    *number of necessary signatures, thus limiting their ability to make the matter the focus of*

3    *statewide discussion." Meyer v. Grant* at 414. "*Unquestionably, whether* [Plaintiff] *should be*

4    *[able to seek Ballot-Access] in [North Carolina] is a matter of societal concern that* [Plaintiff]

5    *has a right to [pursue] publicly without risking criminal sanctions. 'The freedom of speech and*

6    *of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly*

7    *and truthfully all matters of public concern without previous restraint or fear of subsequent*

8    *punishment.' The First Amendment 'was fashioned to assure unfettered interchange of ideas for*

9    *the bringing about of political and social changes desired by the people.'" Meyer v. Grant* at

10    421. "The rights of voters and the rights of candidates do not lend themselves to neat separation;

11    laws that affect candidates always have at least some theoretical, correlative effect on voters."

12    *Anderson* at 786.

13           As we made clear in *U. S. Term Limits*, "the Framers understood the Elections Clause as

14    a grant of authority to issue procedural regulations, and not as a source of power to dictate

15    electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional

16    restraints." 514 U. S., at 833-834; see also *Cook v. Gralike*, 531 U.S. 510, 523 (2001)."It has

17    long been established that a State may not impose a penalty upon those who exercise a right

18    guaranteed by the Constitution. . . . 'Constitutional rights would be of little value if they could be

19    . . . indirectly denied.' . . ." *Blumstein* at 341. "For even when pursuing a legitimate interest, a

20    State may not choose means that unnecessarily restrict constitutionally protected liberty. *Dunn v.*

21    *Blumstein*, 405 U.S. at 405 U. S. 343. 'Precision of regulation must be the touchstone in an area

22    so closely touching our most precious freedoms.' *NAACP v. Button*, 371 U.S. [415], 371 U. S.

23    438 [(1963)]. Moreover, "[a]ny interference with the freedom of a party is simultaneously an

1  interference with the freedom of its adherents." Sweezy v. New Hampshire, 354 U. S. 234, 354

2  U. S. 250 (1957); see *NAACP v. Button*, 371 U. S. 415, 371 U. S. 431 (1963). *Cousins v.*

3  *Wigoda*, 419 U.S. at 487-488. "*The State thus limits the Party's associational opportunities at the*

4  *crucial juncture at which the appeal to common principles may be translated into concerted*

5  *action, and hence to political power in the community. The fact that the State has the power to*

6  *regulate the time, place, and manner of elections does not justify, without more, the abridgment*

7  *of fundamental rights, such as the right to vote or, as here, the freedom of political association.*"

8  *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 213-217 (1986).

9  "[s]ometimes the grossest discrimination can lie in treating things that are different as though

10  they were exactly alike." *Anderson* at 801.

11  Plaintiff does not dispute that these restrictions can be used for State office but not for

12  Federal Office. The simplest solution to please both parties is to make a separate form for

13  Federal Candidates that only has the qualifications mandated in Article 1 Section 2 Clause 2 of

14  the U.S. Constitution.

15  To satisfy standing : 1.) NCGS 13-1, NCGS 163-55, 82.1(c)(2), 82.4, 106(a), 106(b),

16  106(e), 106.1, 106.2, 106.5(a) 106.5(b), 107, 127.3 et seq, 275, and Article 6 Section 2 and 8 of

17  the NC Constitution [9C-10C, 15C-31C, 33C-34C, 38C] are preventing Plaintiff from being a

18  Registered Voter, which is a requisite for Federal Office on Defendants' Candidacy Form [36C-

19  37C]; 2.) There is no reason to believe the State/Defendants will not enforce its own laws as

20  Plaintiff has already been denied the ability to be a Registered Voter [2A] and 3.) Plaintiff

21  believes this will be redressed favorably.

22  The States are free to regulate voters but not qualifications for Federal Candidates.

## B.) DEFENDANTS REQUIRE THAT CANDIDATES BE AFFILIATED WITH A
## POLITICAL PARTY FOR A 90-DAY PERIOD

Being affiliated with a political party for 90 days is another sophisticated and pernicious attempt to deny Petitioner Ballot-Access which even applies to non-felons and adds an additional qualification for U.S. House of Representatives than what is mandated in the U.S. Constitution. In order to be affiliated with a Political Party for 90 days: you have to be a Registered Voter. See NCGS 163-106, 106.1, 106.5(b) [21C-23C, 25C]; however felons can't be Registered Voters, thus NCGS 13-1, NCGS 163-275 and Article VI Section 2 Clause 3, Article VI Section 8 of the NC Constitution take effect [13C, 33C-34C, 9C-10C]. Due to Plaintiff's status as an "Active Felon" [2A] and NCGS 13-1, NCGS 163-106, 106.1, 106.5, 163-275 [13C, 21C-25C, 33C-34C]. *See* NCGS 163-106.1 [23C]. The Candidacy Form used in North Carolina applies to both Federal and State offices [36C-37], whereas if Petitioner lived in Virginia or Florida he wouldn't be having this problem as they use separate forms for state and federal candidates [3A-6A]. Plaintiff has and will be denied access to the ballot for U.S. House of Representatives thus the "Strict Scrutiny" test under *Anderson* applies.

*Dunn v Blumstein*, 405 U.S. 330 (1972) is highly persuasive if not identical here. In *Blumstein* a Tennessee law required residents to wait 15 months before they can vote and anybody who traveled outside of their districts would also have to wait 15 months. *Blumstein* at 330-331. Similarly in North Carolina for a person to run for Federal Office Defendants require that a candidate be affiliated with a political party for 90-days to appear on the ballot. "The State cannot seriously maintain that it is 'necessary' to reside for a year in the State and three months in the county in order to be knowledgeable about congressional, state, or even purely local elections." *Blumstein* at 358. In North Carolina there is no state interest to make one affiliated

15

1    with a political party for 90 days, just so that they can run for U.S. House of Representatives –

2    that is an issue for voters to decide : not the government. This 90 day requirement denies Ballot-

3    Access. "For even when pursuing a legitimate interest, a State may not choose means that

4    unnecessarily restrict constitutionally protected liberty." *Blumstein* at 343.

5          Defendants responding to a separate Complaint involving Plaintiff [22B-26B] said that

6    these restrictions are to ensure that only "serious candidates" appear on the ballot. A matter of

7    how "serious" a candidate is, **is a matter for voters : not the government**. "A State's claim that

8    it is enhancing the ability of its citizenry to make wise decisions by [only allowing 'serious

9    candidates' on the ballot] must be viewed with some skepticism." *Anderson v. Celebrezze*, supra,

10    at 798. "Even if the State were correct, a State, or a court, may not constitutionally substitute its

11    own judgment for that of the Party." *Democratic Party of United States v. Wisconsin ex rel. La*

12    *Follette*, 450 U.S., at 123-124. See also *Tashjian* at 224. "It is especially difficult for the State to

13    justify a restriction that limits political participation by an identifiable political group whose

14    members share a particular viewpoint, associational preference, or economic status." *Anderson* at

15    793. As we made clear in *U. S. Term Limits*, "the Framers understood the Elections Clause as a

16    grant of authority to issue procedural regulations, and not as a source of power to dictate

17    electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional

18    restraints." 514 U. S., at 833-834; see also *Cook v. Gralike*, 531 U.S. 510, 523 (2001).

19          "Precision of regulation must be the touchstone in an area so closely touching our most

20    precious freedoms." *NAACP v. Button*, 371 U.S. [415], 371 U. S. 438 [(1963)]. *Anderson* at 806.

21    "The right of a party or an individual to a place on a ballot is entitled to protection and is

22    intertwined with the rights of voters." *Lubin v. Panish*, 415 U. S. 709, 415 U. S. 716 (1974)."The

23    pervasive national interest in the selection of candidates for national office, and this national

1 interest is greater than any interest of an individual State." *Anderson* at 795."There can no longer

2 be any doubt that freedom to associate with others for the common advancement of political

3 beliefs and ideas is a form of 'orderly group activity' protected by the First and Fourteenth

4 Amendments. (citations omitted). The right to associate with the political party of one's choice is

5 an integral part of this basic constitutional freedom. *Williams v. Rhodes*, 393 U. S. 23, 393 U. S.

6 30." *Kusper v Pontikes*, 414 at 56-57 (1973). These problems are not supposed to be a part of the

7 political process to where Plaintiff can be restricted by state-agencies, especially in the middle of

8 campaigning. These hurdles are adding additional qualifications for U.S. House of

9 Representatives.

10 "[s]ometimes the grossest discrimination can lie in treating things that are different as though

11 they were exactly alike." *Anderson* at 801.

12 To satisfy standing : 1.) NCGS 13-1, NCGS 163-55, 82.1(c)(2), 82.4, 106(a), 106(b),

13 106(e), 106.1, 106.2, 106.5(a) 106.5(b), 107, 127.3 et seq, 275, and Article 6 Section 2 and 8 of

14 the NC Constitution [9C-10C, 15C-31C, 33C-34C, 38C] are preventing Plaintiff from being a

15 Registered Voter – which subsequently prevents Plaintiff from being affiliated with a Political

16 Party for 90 Days, which is a requisite for Federal Office on Defendants' Candidacy Form [36C-

17 37C]; 2.) There is no reason to believe the State/Defendants will not enforce its own laws as

18 Plaintiff has already been denied the ability to be a Registered Voter [2A] and 3.) Plaintiff

19 believes this will be redressed favorably.

20 The States are free to regulate voters but not qualifications for Federal Candidates.

21

22

23

Case 5:23-cv-00506-M-BM   Document 1   Filed 09/14/23   Page 25 of 46

**C.) DEFENDANTS DENY PLAINTIFF FROM COMING ON THE BALLOT DUE TO HIS STATUS AS AN "ACTIVE FELON" – IN THE EVENT PLAINTIFF IS FOUND TO NO LONGER BE "ACTIVE" DEFENDANTS UNCONSITTUTIONALLY SCRUTINIZE FELONS FROM COMING ON THE BALLOT**

**PART 1.**

Plaintiff has been denied to be a Registered Voter on account of him being an "Active Felon" [2A]. A close reading of NCGS 163-106(e) shows that the no-felony requirement even applies to Federal Office as it clearly mentions NCGS 163-106.2 [24C]. When reading these statutes *in pari materia* with NCGS 163-106.5 [25C] and Article 6 Section 2 Clause 3 and Article 6 Section 8 of the North Carolina Constitution [9C-10C] there is no doubt felons are banned from coming on the ballot for Federal Office. This undoubtedly adds an additional qualification for U.S. House of Representatives than what is mandated in Article 1 Section 2 Clause 2 of the U.S. Constitution. The Candidacy Form used in North Carolina applies to both Federal and State offices [36C-37], whereas if Plaintiff lived in Virginia or Florida he wouldn't be having this problem as they use separate forms for state and federal candidates [3A-6A]. As we made clear in *U. S. Term Limits*, "the Framers understood the Elections Clause as a grant of authority to issue procedural regulations, and not as a source of power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional restraints." 514 U. S., at 833-834; see also *Cook v. Gralike*, 531 U.S. 510, 523 (2001). This is the State dictating electoral outcomes and by seemingly saying that until Plaintiff is no longer a "wretched individual," at least to the Government's eyes, he is not allowed on the ballot. This is clearly the government devising a sophisticated and pernicious way to violate Federal

18

1  Constitutional Rights. To deny a felon ballot access is no different than denying ballot-access

2  based on one's ethnicity, origin, sex, etc.

3      *Carrington v. Rash*, 380 U.S. 89 (1965) is identical to the situation at present. In

4  *Carrington* the Texas constitution denied active servicemembers of the military from voting at

5  all. See *Carrington* at 89-91. Article VI Section 2 Clause 3 of the NC Constitution [9C] denies

6  felons the right to vote – even those who are paroled; Article VI Section 8 of the NC Constitution

7  [10C] denies felons from running for office. There is no doubt that Defendants require that

8  Plaintiff be a Registered Voter via Candidacy Form [36C-37C] and NCGS 163-106, 106.5 [21C-

9  22C, 25C] to apply for candidacy for Federal Office and due to Plaintiff's status as a felon he

10  cannot exercise his right to run for U.S. House of Representatives due to NCGS 13-1, 163-

11  106(e), 106.5(b), 275 [13C, 21C-25C, 33C-34C]. Just like how the NC Constitution denies active

12  felons the Right to vote is the same way the Texas Constitution denied active military

13  servicemen the Right to vote. Plaintiff sees no distinction from *Carrington* and the case *sub*

14  *judice*. The requirement of not being a felon, NCGS 163-106(e), 106.5(b) [21C-25C], seems to

15  say that until the government believes that Plaintiff is no longer a "wretched individual" he

16  cannot run for Federal Office. "*But if they are, in fact, [felons], . . . they, as all other [felons],*

17  *have a right to an equal opportunity for political representation. . . . 'Fencing out' from the*

18  *franchise a sector of the population because of the way they may vote [or whether the person is a*

19  *felon] is constitutionally impermissible.*" *Blumstein* at 355. "*Section 1971(a)(1) provides that*

20  *"[a]ll citizens of the United States who are otherwise qualified by law to vote . . . shall be*

21  *entitled and allowed to vote at all . . . elections, without distinction of race, color, **or previous***

22  ***condition of servitude** . . . .the prohibitions of § 1971 encompass practices which have only an*

19

1  *indirect effect on the worth of a citizen's vote in addition to those which directly affect the ability*

2  *to cast a vote.*" *Washington v. Finlay*, 664 F. 2d at 926.

3          To make matters more serious it is a Class I felony for a felon to vote, let alone come on

4  the ballot. *See* NCGS 163-106(e), 275 [21C-22C, 33C-34C]. The criminalization for felons to

5  vote is no stranger in North Carolina as this has happened to several individuals. *See* "Alamance

6  12" https://www.nytimes.com/2018/08/02/us/arrested-voting-north-carolina.html and "The Hoke

7  County Case[s]" https://www.theguardian.com/us-news/2020/jul/21/voting-arrest-racist-law-

8  north-carolina-lanisha-brachter as well as "Statistical Proof"

9  **https://www.wfae.org/politics/2020-10-13/what-to-know-about-illegal-voting-in-north-**

10  **carolina** and the "Board's Response"

11  **https://s3.amazonaws.com/dl.ncsbe.gov/sboe/numbermemo/2020/Numbered%20Memo%20**

12  **2020-26_Court%20Order%20re%20Certain%20Felons.pdf ;**

13  **https://s3.amazonaws.com/dl.ncsbe.gov/sboe/Post-**

14  **Election%20Audit%20Report_2016%20General%20Election/Post-**

15  **Election_Audit_Report.pdf** [33B-54B]. Plaintiff has even been denied to be a Registered Voter

16  on account of him being an "Active Felon." *See* [2A]. Therefore Plaintiff wouldn't be able to

17  meet the statutory qualifications enunciated in NCGS 163-106, 106.5 [21C-22C, 25C] and would

18  be denied access to the ballot – and even penalized for trying. Plaintiff has been to prison and is

19  not trying to go back on account of him exercising a Federally Protected Constitutional Right. "It

20  has long been established that a State may not impose a penalty upon those who exercise a right

21  guaranteed by the Constitution. . . . 'Constitutional rights would be of little value if they could be

22  . . . indirectly denied.' . . ." *Blumstein* at 341.

20

1    Defendants will probably make the argument that there is the "Challenge Process" but

2    that process is not guaranteed. Plaintiff is trying to campaign and these obstacles prevent

3    Plaintiff from getting his name out there and campaigning thereby causing irreparable harm.

4    These problems are not supposed to be a part of the political process to where Plaintiff can be

5    restricted by state-agencies, especially in the middle of campaigning. One thing that cannot be

6    denied is that these problems should not be happening. *See* <u>Argument 1.A</u> *supra*. The problem is

7    that during candidacy filing in December Plaintiff's felony convictions will be checked by

8    humans and the cause for human error, which is highly possible given that Plaintiff has just been

9    denied to be a Registered Voter [2A], will force Plaintiff to undergo the appeal process which

10   takes 30 days at the least. By that time the filing period will be over and Plaintiff could not be

11   placed on the ballot and subsequently forcing Federal Court intervention : the bottom line is

12   Plaintiff shouldn't have to suffer these obstacles. These problems are not supposed to be a part of

13   the political process to where Plaintiff can be restricted by state-agencies, especially in the

14   middle of campaigning. Defendants may make the issue that the no injury has happened yet and

15   that would be a meritless argument because The Fourth Circuit "-along with several other

16   circuits-has held that ' standing requirements are somewhat relaxed in First Amendment cases,'

17   particularly regarding the injury-in-fact requirement." *Davison v. Randall*, 912 F.3d 666, 678

18   (4th Cir. 2019), as amended (Jan. 9, 2019) (quoting *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th

19   Cir. 2013)). Here, Plaintiff alleges (1) he has a First Amendment right to run for U.S. House of

20   Representatives in District 13 of North Carolina for the 2024 Midterms, (2) a North Carolina

21   statute permitting challenges to his candidacy pursuant to an inapplicable section of the U.S.

22   Constitution infringes on that right, and (3) he seeks declaratory and injunctive relief. Therefore,

23   Plaintiff "must establish an ongoing or future injury in fact." *Kenny v. Wilson*, 885 F.3d 280,

1   287-88 (4th Cir. 2018) (citing *O 'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Plaintiff meets

2   this very component as he has been denied to become a Registered Voter on account of him

3   being an Active Felon [2A] and being a Registered Voter is a requisite to run for U.S. House of

4   Representatives in North Carolina [36C-37C]; one who does not mee the statutory qualifications

5   shall be denied ballot-access. *See* NCGS 163-106.5(b) [25C].

6          The Supreme Court has recognized that an Article III injury may be sufficient for

7   standing purposes by the threatened enforcement of a law. Plaintiff meets this very component

8   by NCGS 163-106(e) [21C-22C] and *Susan B. Anthony List*, 573 U.S. at 158-59. "When an

9   individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is

10  not a prerequisite to challenging the law." Id. at 158 (citing *Steffel v. Thompson*, 415 U.S. 452,

11  459 (1974) ('[I]t is not necessary that [a plaintiff] first expose himself to actual arrest or

12  prosecution to be entitled to challenge a statute that he claims deters the exercise of his

13  constitutional rights.')). The Supreme Court has 'permitted pre-enforcement review under

14  circumstances that render the threatened enforcement sufficiently imminent'; specifically, the

15  Court has 'held that a plaintiff satisfies the injury- in-fact requirement where he alleges [1] an

16  intention to engage in a course of conduct arguably affected with a constitutional interest, but

17  proscribed by a statute, and [2] there exists a credible threat of prosecution thereunder.'" Id. at

18  159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Regarding the second part of

19  the Babbitt standard, "there is a credible threat of future enforcement so long as the threat is not '

20  imaginary or wholly speculative,' ' chimerical,' or ' wholly conjectural.'" *Kenny*, 885 F.3d at 287

21  (citing *Babbitt*, 442 U.S. at 302, *Steffel*, 415 U.S. at 459, and *Golden v. Zwick/er*, 394 U.S. 103,

22  109 (1969)). " [P]ast enforcement against the same conduct is good evidence that the threat of

23  enforcement is not chimerical." Id. at 288 (quoting *Susan B. Anthony List*, 573 U.S. at 164). *See*

22

[33B-54B]. Threat of prosecution is especially credible when defendants have not "disavowed enforcement" if plaintiffs engage in similar conduct in the future. Id.; see also *Susan B. Anthony List*, 573 U.S. at 166; Furthermore, there is a presumption that a "non-moribund statute that facially restricts expressive activity by the class to which the plaintiff belongs presents such a credible threat." *Kenny*, 885 F.3d at 288 (quoting *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999)). "This presumption is particularly appropriate when the presence of a statute tends to chill the exercise of First Amendment rights." Id. "It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution. . . . 'Constitutional rights would be of little value if they could be . . . indirectly denied.' . . ." *Blumstein* at 341. "For even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty. *Dunn v. Blumstein*, 405 U.S. at 405 U. S. 343.

Moreover, under *Babbitt*, Plaintiff established the first prong by showing he sought candidacy in the U.S. House of Representatives for the 2024 election, which implicates the First Amendment's freedom of association, including "the rights to run for office, have one's name on the ballot, and present one's views to the electorate." *Washington v. Finlay*, 664 F.2d 913, 927-28 (4th Cir. 1981); cf *Williams v. Rhodes*, 393 U.S. 23, 31 (1968) ("The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot ... "). Plaintiff satisfies the 2nd Prong of *Babbitt* by showing that he has been denied to be a Registered Voter on account of him being an "Active Felon" [2A]. When Plaintiff filed this lawsuit, Plaintiff faced a "future injury in fact" that was "certainly impending, or there was a substantial risk that the harm would occur." *See Susan B. Anthony List*, 573 U.S. at 158.

**PART 2.**

2    The Candidacy Form asks the question "Have You Been Convicted of a Felony?" [36C-

3    37C]. A close reading of NCGS 163-106(e) [21C-22C] shows that the no-felony requirement

4    even applies to Federal Office as it clearly mentions NCGS 163-106.2 [24C]. Plaintiff is a

5    convicted felon who recently had his rights restored on 3rd September 2023 [10A-11A]. If

6    Plaintiff doesn't sign the form, attesting to a felony conviction, he commits a Class I Felony and

7    then won't be on the ballot. *See* NCGS 163.106.5(b) [25C]. The "strict scrutiny" test in *Anderson*

8    applies.

9    Plaintiff will be forced to sign that he has, in his lifetime, been convicted of a felony and

10    if not he will not be on the ballot. There can be no legitimate state interest in finding out about

11    people's *past* affairs. This undoubtedly adds an indirect additional qualification for U.S. House

12    of Representatives than what is mandated in Article 1 Section 2 Clause 2 of the U.S.

13    Constitution. As the form stands currently [36C-37C] one has to be a Registered Voter and one

14    cannot be a registered voter if one is serving an active sentence or is on probation. See NCGS

15    163-55(a)(2), NCGS 13-1 [13C, 15C]. Being a felon is a status : no more different than one's

16    ethnicity. Imagine if the form asked "Are you White?" or "Are you Black?" etc. The form may

17    even ask "Have you ever took kitchen grease in your lifetime? NCGS 14-79.2?" There would

18    have to be some reason Defendants are asking this question – and the probability of human error

19    can cause a multitude of problems for Plaintiff, especially since his restoration of rights is so

20    close to the 90 day affiliation mark. *See* NCGS 13-1, 163-106.1 [13C, 23C]. This scrutiny

21    violates Plaintiff's 4th amendment right to privacy and subsequently causes a "chilling" 1st and

22    14th Amendment violation to run for office. As we made clear in *U. S. Term Limits*, "the Framers

23    understood the Elections Clause as a grant of authority to issue procedural regulations, and not as

1    a source of power to dictate electoral outcomes, to favor or disfavor a class of candidates, or to

2    evade important constitutional restraints." 514 U. S., at 833-834; see also *Cook v. Gralike*, 531

3    U.S. 510, 523 (2001). This is the State dictating electoral outcomes and NCGS 163-106(e),

4    106.5(b) [21C-22C, 25C], seems to say that until the government believes that Plaintiff is no

5    longer a "wretched individual" he cannot run for Federal Office and will be under scrutiny for

6    the rest of his life.

7         The problem is that during candidacy filing in December Plaintiff's felony convictions

8    will be checked by humans and the cause for human error, which is highly possible given that

9    Plaintiff has just been denied to be a Registered Voter [2A], will force Plaintiff to undergo the

10   appeal process which takes 30 days at the least. By that time the filing period will be over and

11   Plaintiff could not be placed on the ballot and subsequently forcing Federal Court intervention :

12   the bottom line is Plaintiff shouldn't have to suffer these obstacles. These problems are not

13   supposed to be a part of the political process to where Plaintiff can be restricted by state-

14   agencies, especially in the middle of campaigning. What is clear is that if Plaintiff checkmarks

15   that he has not been convicted of a felony he commits an I Class felony and will be denied on the

16   ballot and 2.) if Plaintiff does not sign the form attesting to be a felon then he also will not be on

17   the ballot. Plaintiff expects Defendants to respond and say that "This section applies to everyone

18   and doesn't just scrutinize Plaintiff" – that response will be meritless because the act of being a

19   Registered Voter, while seeming to be harmless, is actually unconstitutional[1] – the requirement

20   of disclosing felony convictions is no different since it is tied with receiving ballot-access for

21   U.S. House of Representatives : therefore it adds an additional qualification than what is

22   mandated in Article 1 Section 2 Clause 2. There is no reason to believe the State/Defendants will

---

[1] See Argument 1.A *supra*

25

1    not enforce its own laws, being NCGS 163-106(e), 106.5(b) [21C-22C, 25C]. If Plaintiff lived in

2    Virginia or Florida he wouldn't be having this problem as they use separate forms for federal and

3    state office [3A-6A]. "It is especially difficult for the State to justify a restriction that limits

4    political participation by an identifiable political group whose members share a particular

5    viewpoint, associational preference, or economic status." *Anderson* at 793.

6        The Supreme Court has recognized that an Article III injury may be sufficient for

7    standing purposes by the threatened enforcement of a law. Plaintiff meets this very component

8    by NCGS 163-106(e) [21C-22C] and *Susan B. Anthony List*, 573 U.S. at 158-59. "When an

9    individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is

10   not a prerequisite to challenging the law." Id. at 158 (citing *Steffel v. Thompson*, 415 U.S. 452,

11   459 (1974) ('[I]t is not necessary that [a plaintiff] first expose himself to actual arrest or

12   prosecution to be entitled to challenge a statute that he claims deters the exercise of his

13   constitutional rights.')). The Supreme Court has 'permitted pre-enforcement review under

14   circumstances that render the threatened enforcement sufficiently imminent'; specifically, the

15   Court has 'held that a plaintiff satisfies the injury- in-fact requirement where he alleges [ 1] an

16   intention to engage in a course of conduct arguably affected with a constitutional interest,  but

17   proscribed by a  statute,  and [2] there exists a  credible threat of prosecution thereunder.'" Id. at

18   159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

19       Regarding the second part of the Babbitt standard, "there is a credible threat of future

20   enforcement so long as the threat is not ' imaginary or wholly speculative,' ' chimerical,' or '

21   wholly conjectural.'" *Kenny*, 885 F.3d at 287 (citing *Babbitt*, 442 U.S. at 302, *Steffel*, 415 U.S. at

22   459, and *Golden v. Zwick/er*, 394 U.S. 103, 109 (1969)). " [P]ast enforcement against the same

23   conduct is good evidence that the threat of enforcement is not chimerical." Id. at 288 (quoting

26

1    *Susan B. Anthony List*, 573 U.S. at 164). Threat of prosecution is especially credible when

2    defendants have not "disavowed enforcement" if plaintiffs engage in similar conduct in the

3    future. Id.; see also *Susan B. Anthony List*, 573 U.S. at 166; Furthermore, there is a presumption

4    that a "non-moribund statute that facially restricts expressive activity by the class to which the

5    plaintiff belongs presents such a credible threat." *Kenny*, 885 F.3d at 288 (quoting *North*

6    *Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999)). "This presumption is

7    particularly appropriate when the presence of a statute tends to chill the exercise of First

8    Amendment rights." Id. "It has long been established that a State may not impose a penalty upon

9    those who exercise a right guaranteed by the Constitution. . . . 'Constitutional rights would be of

10   little value if they could be . . . indirectly denied.' . . ." *Blumstein* at 341. "For even when

11   pursuing a legitimate interest, a State may not choose means that unnecessarily restrict

12   constitutionally protected liberty. *Dunn v. Blumstein*, 405 U.S. at 405 U. S. 343.

13          Moreover, under *Babbitt*, Plaintiff established the first prong by showing he sought

14   candidacy in the U.S. House of Representatives for the 2024 election, which implicates the First

15   Amendment's freedom of association, including "the rights to run for office, have one's name on

16   the ballot, and present one's views to the electorate." *Washington v. Finlay*, 664 F.2d 913, 927-28

17   (4th Cir. 1981); cf *Williams v. Rhodes*, 393 U.S. 23, 31 (1968) ("The right to form a party for the

18   advancement of political goals means little if a party can be kept off the election ballot ... ").

19   Plaintiff satisfies the 2nd Prong of *Babbitt* by showing that refusal to acknowledge that he is a

20   convicted felon will result in him being charged with a Class I Felony [36C-37C]. NCGS 163-

21   106(e) [21C-22C]. When Plaintiff filed this lawsuit, Plaintiff faced a "future injury in fact" that

22   was "certainly impending, or there was a substantial risk that the harm would occur." *See Susan*

23   *B. Anthony List*, 573 U.S. at 158.

27

1    Plaintiff must reiterate that he does not oppose these restrictions for state office. The only

2    thing Plaintiff has to comply with is 1.) Being 25 years old 2.) A resident of America for 7 years

3    and 3.) An Inhabitant of North Carolina. The simplest solution is to adopt a separate form for

4    federal candidates and this solution would be at the most minimal cost.

5    **D.) PLAINTIFF WILL BE BARREED FROM THE UPCOMING 2024 MIDTERMS DUE**

6                                        **TO INDIGENCY**

7    Plaintiff seeks to run for U.S. House of Representatives in District 13 of North Carolina

8    for the upcoming 2024 Midterms. *See* https://www.fec.gov/data/candidate/H4NC13090/ .

9    Plaintiff will be denied because of inability to pay the Filing Fee requirement of $1,740.00

10   dollars, due to indigency. *See* NCGS 163-107. This behavior has been condemned in *Lubin v.*

11   *Panish*, 415 U.S. 709 (1974). Plaintiff does not dispute that these restrictions can be applicable

12   for *State* office but not for Federal Office.

13   The easiest solution, which is at *minimal cost*, is requiring Defendants to adopt a separate

14   Filing Form for Federal Office, as is done in many states such as Florida, Virginia, etc. [3A-6A].

15   What makes this matter applicable to Plaintiff is that the inability to pay Filing

16   Fees is tied to disenfranchisement to hold *Federal* public office – thereby adding additional

17   qualifications which is specifically mandated in Article 1 Section 2 Clause 2 of the U.S.

18   Constitution and in turn violates Federal Supremacy via Article 6 Clause 2 of the U.S.

19   Constitution. Therefore this issue is "capable of repetition yet evading review." 219 U.S. 498,

20   515. The Candidacy Form used in North Carolina applies to both Federal and State offices [36C-

21   37C], whereas if Plaintiff lived in Virginia or Florida he wouldn't be having this problem as they

22   use separate forms for state and federal office [3A-6A].

1    The issue of being placed on the ballot essentially comes down to "how much money one

2    has in his/her wallet." This matter warrants this Court's powers to prevent this unconstitutional

3    action as this can even happen to people seeking U.S. Senate and even the Presidency. What is

4    noteworthy is that NCGS 163-107 doesn't apply to the presidency – the reason being that if the

5    President were to pay 1% of his salary in North Carolina, then he would end up having to do the

6    same in the next 49 states thereby totaling 50% at the very least. What Plaintiff is getting at is

7    that the ability to charge 1% of the salary allows for states to indiscreetly add additional

8    qualifications for Federal Office. These additional qualifications diminish Federal Sovereignty

9    "piece by piece" and erode the fabric of the U.S. Constitution. There can be no state interest in

10   diminishing candidates based on their inability to pay a filing fee – therefore the "strict scrutiny"

11   test in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) applies. As we made clear in *U. S.*

12   *Term Limits*, "the Framers understood the Elections Clause as a grant of authority to issue

13   procedural regulations, and not as a source of power to dictate electoral outcomes, to favor or

14   disfavor a class of candidates, or to evade important constitutional restraints." 514 U. S., at 833-

15   834; see also *Cook v. Gralike*, 531 U.S. 510, 523 (2001). "*If the qualifications and eligibility of*

16   *[candidates] to [Federal Office] were left to state law, 'each of the fifty states could establish the*

17   *qualifications of its [federal members] to the various [state laws] without regard to*

18   *[constitutional] policy, an obviously intolerable result.'*" *Wigoda* at 489-90. "The right of a party

19   or an individual to a place on a ballot is entitled to protection and is intertwined with the rights of

20   voters." *Lubin v. Panish*, 415 U. S. 709, 415 U. S. 716 (1974). "*But where the differential*

21   *treatment concerns a restriction on the right to seek public office - a right protected by the First*

22   *Amendment - that Amendment supplies the federal interest in equality that may be lacking where*

23   *the State is simply* [unduly burdening a candidate for requirements not in the U.S. Constitution].

1   *Such restrictions affect not only the expressional and associational rights of candidates, but*

2   *those of voters as well. Voters generally assert their views on public issues by casting their*

3   *ballots for the candidate of their choice. 'By limiting the choices available to voters, the State*

4   *impairs the voters' ability to express their political preferences.' See, e.g., Illinois State Bd. of*

5   *Elections v. Socialist Workers Party, 440 U. S. 173 (1979)." Clements v. Fashing*, 457 U.S. 957

6   at 986 (1982).

7          "It is to be expected that a voter hopes to find on the ballot a candidate who comes near

8   to reflecting his policy preferences on contemporary issues." *Anderson v. Celebrezze*, 460 U.S.

9          780, 787 (1983). See also *Clements v. Fashing*, 457 U.S. 957 at 987 n.8 (1982).

10         To satisfy standing : 1.) NCGS 163-107 [38C] is preventing Plaintiff from paying the

11  Filing Fee, which is a requisite for Federal Office on Defendants' Candidacy Form [36C-37C];

12  2.) There is no reason to believe the State/Defendants will not enforce its own laws as and 3.)

13  Plaintiff believes this will be redressed favorably.

14         **E.) THE PROBLEM WITH RUNNING AS AN UNAFFILIATED CANDIDATE**

15         Defendants in their Brief, regarding a Separate Complaint, recommended that Plaintiff

16  could still file as an Unaffiliated Candidate [16B, 26B, 28B]. The problem with that is one must

17  still be a Registered Voter to run as an Unaffiliated Candidate *see* NCGS 163-122 [26C], to

18  which Plaintiff has been denied [2A]. Defendants seem to believe that "just being on the ballot"

19  while sacrificing the party one chooses to run on, is perfectly constitutional. Plaintiff disagrees.

20  Defendants' analysis seems to say: "If you want to appear on that ballot for *Federal Office* you

21  got to sacrifice the party you intend to run on." "*In assuming that a signature-gathering process*

22  *was the only available remedy, the courts below gave too little recognition to the [Statute]*

23  *passed by the [North Carolina] Legislature making that very process unavailable to independent*

30

1    *candidates for the office of [U.S. House of Representatives]. In taking that action, the [North*

2    *Carolina] Legislature provided no means by which an independent [U.S. House] candidate*

3    *might demonstrate substantial voter support. McCarthy v. Briscoe, 429 U.S. 1316, 1322. "For*

4    *the candidate himself, it would mean undertaking the serious responsibilities of [independent]*

5    *party status . . . such as the conduct of a primary, holding party conventions, and the*

6    *promulgation of party platforms. But more fundamentally, the candidate, who is by definition a*

7    *[partisan Republican] and desires to remain one, must now consider himself a[n] independent*

8    *man, surrendering his [partisan] status. Must he necessarily choose the [independent] route if*

9    *he wants to appear on the ballot in the general election? We think not." Storer v. Brown*, 415

10   U.S. 724, 745-746 (1974).

11       If Plaintiff ran as an unaffiliated candidate he would have said so: but instead Plaintiff

12   chose to run as a **Republican**. "The right to associate with the political party of one's choice is an

13   integral part of this basic constitutional freedom. (citations omitted)." *Kusper v. Pontikes*, 414 at

14   56-57 (1973). More problems that arise for recommending Plaintiff to run as an Unaffiliated

15   Candidate is that in North Carolina there is a semi-closed blanket primary: meaning that an

16   unaffiliated voter could vote for either a Democrat or Republican but a Democrat/Republican

17   voter can NOT vote for an Unaffiliated Candidate; not only would that syphon away Plaintiff's

18   votes and confuse his constituents but Plaintiff would lose endorsements due to running as an

19   Unaffiliated Candidate. Because the right to run for office is dependent upon the right of

20   association, a candidate bringing a right-to-run claim must allege that "by running for Congress

21   he was advancing the political ideas of a particular set of voters." *Newcomb v. Brennan*, 558 F.

22   2d 825, 828 (7th Cir. 1977). "*On this point 'even if the State were correct, a State, or a court,*

23   *may not constitutionally substitute its own judgment for that of the [Republican] Party [simply*

31

1    *because there was time to run as a different party].' (citations omitted). The Party's*

2    *determination of the boundaries of its own association, and of the structure which best allows it*

3    *to pursue its political goals, is protected by the Constitution. 'And as is true of all expressions of*

4    *First Amendment freedoms, the courts may not interfere on the ground that they view a*

5    *particular expression as unwise or irrational [or simply because there was time to run as a*

6    *different party].' Id. at 450 U. S. 124." Tashjian at 224.*

7       "It is to be expected that a voter hopes to find on the ballot a candidate who comes near

8    to reflecting his policy preferences on contemporary issues." *Anderson v. Celebrezze*, 460 U.S.

9    780, 787 (1983). See also *Clements v. Fashing*, 457 U.S. 957 at 987 n.8 (1982).

10    "[s]ometimes the grossest discrimination can lie in treating things that are different as though

11             they were exactly alike." *Anderson* at 801.

12       **F.) INVASION OF PRIVACY BY DEFENDANTS**

13       The act of becoming a Registered Voter, which is a Requisite for Federal Office [36C-

14    37C], displays Plaintiff's address for anyone to see on https://vt.ncsbe.gov/reglkup/ . This action

15    by Defendants violates Plaintiff's 1st, 4th, 5th, 14th, Amendment rights. Displaying Plaintiff's

16    address violates his 4th, and 14th, Amendment right to privacy and thereby chills the 1st

17    amendment right to seek the Federal Office of U.S. House of Representatives. Defendants offer

18    no recourse as to this conduct and thereby violates Plaintiff's 5th, 14th, Amendment right to Due

19    Process. Plaintiff is campaigning and there can be no legitimate interest for Defendants to place

20    an voters address online for the world to see. On the Candidacy form, as it pertains to Federal

21    Office, Many candidates, congressman, congressional staff suffer acts of violence and threats,

22    even Presidents and Federal Judges [2D-26D]. While some acts of violence may or may not

Case 5:23-cv-00506-M-BM   Document 1   Filed 09/14/23   Page 40 of 46

1    happen, it does no good to display the address where one sleeps. It doesn't give a comforting

2    feeling for this level of scrutiny and this is not part of the political environment.

3        Plaintiff does not doubt that judges of the Federal Courts, in North Carolina, participate

4    in the voting process, their addresses get displayed also. Defendants essentially say face scrutiny

5    or don't run at all. One is not to suffer physical injury to have standing. The Fourth Circuit "-

6    along with several other circuits-has held that ' standing requirements are somewhat relaxed in

7    First Amendment cases,' particularly regarding the injury-in-fact requirement." *Davison v.*

8    *Randall*, 912 F.3d 666, 678 (4th Cir. 2019), as amended (Jan. 9, 2019) (quoting *Cooksey v.*

9    *Futrell*, 721 F.3d 226, 235 (4th Cir. 2013)). "This presumption is particularly appropriate when

10    the presence of a statute tends to chill the exercise of First Amendment rights." *Kenny v. Wilson*,

11    885 F.3d 280, 287-88 (4th Cir. 2018). The act of posting Plaintiff's address violates his 4th and

12    14th Amendment rights which are then intertwined with his 1st Amendment right to seek office

13    and therefore causes the "chilling" effect since the issue of being a Registered Voter is a requisite

14    to run for U.S. House of Representatives. *See* <u>Argument 1.B</u> *supra*.

15        The problem is that this act of displaying addresses is done by Defendants and not

16    pursuant to any statute meaning there is no recourse for this action, except for this Court thereby

17    evincing a Federal Question. If this keeps up then the next issues are showing Tax Returns,

18    Marital Status, etc. What Plaintiff is getting at is that this issue becomes a violation of Federal

19    Sovereignty and erodes the U.S. Constitution. This matter requires this Court's powers to stop

20    these violations before the situation turns worse.

21        **2.) <u>IRREPARABLE HARM</u>**

22        "Deprivation of a constitutional right, even for a short period of time, constitutes

23    irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "When the harm alleged by the

33

1 plaintiff is the deprivation of a constitutional right, the likelihood of success on the merits is so

2 "inseparably linked" to the proving of an actual harm that the court may proceed directly to

3 consider the merits of the plaintiff's action." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507,

4 511 (4th Cir.2002) (internal quotation marks omitted). As a general rule, "the denial of a

5 constitutional right ... constitutes irreparable harm for purposes of equitable jurisdiction." *Ross v.*

6 *Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987). Infringement on the right to vote in the nominating

7 phase of an election has long been held to cause irreparable harm of the sort necessitating

8 injunctive relief. See *Gray v. Saunders*, 372 U.S. 368 (1963); *Rockefeller*, 917 F. Supp. At 166.

9      There is no doubt that Plaintiff is suffering irreparable harm every single day because he

10 needs to have a valid campaign free from the state restrictions he complains about in this

11 Complaint. Campaigning takes time and energy and it should not go to waste on account of

12 unconstitutional state interferences. "It is to be expected that a voter hopes to find on the ballot a

13 candidate who comes near to reflecting his policy preferences on contemporary issues."

14 *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983). See also *Clements v. Fashing*, 457 U.S. 957

15 at 987 n.8 (1982).

16      **3.) BALANCE OF EQUITIES TIPS IN PLAINTIFF'S FAVOR**

17      The balance of these equities favors granting injunctive relief, particularly where the

18 Fourth Circuit's "precedent counsels that a state is in no way harmed by issuance of a preliminary

19 injunction which prevents the state from enforcing restrictions likely to be found

20 unconstitutional. If anything, the system is improved by such an injunction." See *Leaders of a*

21 *Beautiful Struggle v. Baltimore Police Dep 't*, 2 F.4th 330, 346 (4th Cir. 2021). "The pervasive

22 national interest in the selection of candidates for national office, and this national interest is

23 greater than any interest of an individual State." *Anderson* at 795. It is especially difficult for the

34

1   State to justify a restriction that limits political participation by an identifiable political group

2   whose members share a particular viewpoint, associational preference, or economic status."

3   *Anderson* at 793.

4          There would be no harm to Defendants at all by granting this injunction. In the worst case

5   scenario the Constitution would be : upheld/honored. Granting this injunction would require

6   Defendants to adhere to the principles our founding fathers mandated in Article I Section 2

7   Clause 2, Article 1 Section 4, Article I Section 5, Article VI Clause 2 of the U.S. Constitution

8   [2C-5C]. Granting this injunction would make sure that Defendants follow the Supreme Law of

9   the Land. As we made clear in *U. S. Term Limits*, "the Framers understood the Elections Clause

10  as a grant of authority to issue procedural regulations, and not as a source of power to dictate

11  electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional

12  restraints." 514 U. S., at 833-834; see also *Cook v. Gralike*, 531 U.S. 510, 523 (2001).

13         The critical issue at this juncture is more than Plaintiff just seeking ballot-access : it

14  makes sure that Federal Supremacy is not violated by state actions : it makes sure that

15  Federalism remains Supreme. Defendants' requirements can even extend into the Senate and

16  even the Presidency. "*The States themselves have no constitutionally mandated role in the great*

17  *task of the selection of [U.S. House of Representatives]. If the qualifications and eligibility of*

18  *[candidates] to [Federal Office] were left to state law, 'each of the fifty states could establish the*

19  *qualifications of its [federal members] to the various [state laws] without regard to*

20  *[constitutional] policy, an obviously intolerable result.'*" *Wigoda* at 489-90.

21                          **4.) INJUNCTION IN THE PUBLIC INTEREST**

22         There is no doubt that the ability to run for Federal Office is arguably one of the most

23  critical rights in this Federal Constitutional Republic we call America. Upholding constitutional

35

1  rights serves the public interest. *Newsom ex rel. Newsom v. Albemarle Cty. Sch. Bd.*, 354 F. 3d

2  249, 261 (4th Cir. 2003). "The right of individuals to associate for the advancement of political

3  beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their

4  votes effectively. Both of these rights, of course, rank among our most precious freedoms."

5  *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). "The pervasive national interest in the selection

6  of candidates for national office, and this national interest is greater than any interest of an

7  individual State." *Anderson* at 795 quoting *Cousins v. Wigoda*, 419 U. S. 477, 419 U. S. 490

8  (1975). "The right of a party or an individual to a place on a ballot is entitled to protection and is

9  intertwined with the rights of voters." *Lubin v. Panish*, 415 U. S. 709, 415 U. S. 716 (1974).

10  "The right to associate with the political party of one's choice is an integral part of this

11  basic constitutional freedom. (citations omitted)." *Kusper v. Pontikes*, 414 at 56-57 (1973). "*But*

12  *where the differential treatment concerns a restriction on the right to seek public office - a right*

13  *protected by the First Amendment - that Amendment supplies the federal interest in equality that*

14  *may be lacking where the State is simply* [unduly burdening a candidate for requirements not in

15  the U.S. Constitution]. *Such restrictions affect not only the expressional and associational rights*

16  *of candidates, but those of voters as well. Voters generally assert their views on public issues by*

17  *casting their ballots for the candidate of their choice. 'By limiting the choices available to*

18  *voters, the State impairs the voters' ability to express their political preferences.' See, e.g.,*

19  *Illinois State Bd. of Elections v. Socialist Workers Party, 440 U. S. 173 (1979)." Clements v.*

20  *Fashing,* 457 U.S. 957 at 986 (1982).

21  "The rights of voters and the rights of candidates do not lend themselves to neat

22  separation; laws that affect candidates always have at least some theoretical, correlative effect on

23  voters." *Anderson* at 786. "The achievement of the goal of the Clause [is] to prevent the mischief

1 that would arise if state voters found themselves disqualified from participating in federal

2 elections...." *Tashjian* Pp. 479 U. S. 225-229.

3

4 **<u>RELIEF/CONCLUSION</u>**

5  **WHEREFORE**, Plaintiff requests that the Court rule that NCGS 13-1, NCGS. 163-55,

6 82.1(c)(2), 82.4, 96, 106(a), 106(b), 106(e), 106.1, 106.2, 106.5(b), 107, 127.3 et seq, 275,

7 Article 6 Section 2 and 8 of the NC Constitution [9C-10C, 13C, 15C-31C, 33C-34C, 38C],

8 violates the 1st , 14th amendment, Article I Section 2 Clause 2, Article 1 Section 4, Article I

9 Section 5, Article VI Clause 2 of the U.S. Constitution [2C-8C] as it pertains to running for U.S.

10 House of Representatives.

11  Plaintiff reverently requests this Court to GRANT Plaintiff's Verified Complaint

12 and ORDER Defendants to adopt a new filing form for Federal Candidates that only require the

13 qualifications of what is mandated in Article 1 Section 2 Clause 2 of the U.S. Constitution.

14  Plaintiff also reverently requests this Court to ORDER Defendants to require the

15 New Form to either have an indigency requirement or have no fee requirement at all, only

16 pertaining to Federal Office.

17  Plaintiff also reverently requests this Court to ORDER Defendants to remove

18 Registered Voters' addresses from display on https://vt.ncsbe.gov/reglkup/

19

20 /Sign/ _Siddhanth Sharma_

21 Siddhanth Sharma *Pro Se*

22

23 /Date/ 9-14-23

24

Siddhanth Sharma
Post Office Box 937
Morrisville, NC, 27560
(919) 880-3394
E-Mail: Siddhanthsharma1996@yahoo.com

37

1 **CERTIFICATE OF FILING/SERVICE/WORD COUNT AND PENALTY OF PERJURY**

2 I declare under penalty of perjury that the forgoing is true, correct, and complete to the best of

3 my knowledge.

4 Petitioner certifies, pursuant to Local Rule 7.2(f), that this Complaint is in compliance with the

5 word-count limit and is 11.698 words.

6 Petitioner certifies that this Motion has been filed with the Clerk of Court, Mr. Peter A Moore,

7 Jr., United States Courthouse, 310 New Bern Avenue, Raleigh, NC 27601/PO Box 25670,

8 Raleigh, NC 27611, via hand delivery and/or first class mail.

9 Petitioner also certifies that a copy has been sent to ALL PARTIES via mail/hand delivery as

10 follows:

11

12 Josh Stein

13 Attorney General

14 P.O. Box 629

15 Raleigh, NC, 27602

16 919-716-6400

17 E-Mail:

18

Sign: _Jerdlanth Jharin_

Date: _9-14-23_

38