IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:23-CV-00506-M

SIDDANTH SHARMA,

        Plaintiff,

v.

ALAN HIRSCH, et al.,

        Defendants.

ORDER

This matter comes before the court on Plaintiff's Motion for a Preliminary Injunction [DE 4], Plaintiff's Motion to Consolidate and Expedite the Complaint and Request for an Injunction [DE 5], Plaintiff's Motion for Leave to File a Reply Brief and Exceed the Word Count [DE 25], Defendant's Motion to Dismiss [DE 28], Defendant's (unopposed) Motion to Consolidate Rulings on the Motion for Preliminary Injunction and Motion to Dismiss [DE 33], and Plaintiff's "Emergency Motion" for a hearing on the Motion for Injunction [DE 38]. For the reasons that follow, the Motion for a Preliminary Injunction is denied, the Motion to Consolidate and Expedite is denied as moot, the Motion for Leave is denied as moot, the Motion to Dismiss is granted, the Motion to Consolidate Rulings is denied as moot, and the Emergency Motion is denied.

## I. Background and Procedural History

Plaintiff resides in Wake County, North Carolina. DE 1 at 13. He has announced his candidacy to run for the United States House of Representatives[1] in North Carolina's Thirteenth Congressional District for the upcoming "2024 Midterms." *Id.* at 9. But, according to the

---

[1] For the sake of brevity, the court will use the term "Congress" for subsequent references to the office Plaintiff seeks.

1

Complaint, several unconstitutional impediments will prevent Plaintiff from gaining access to the ballot for that election. *See id.* at 2-3.

These alleged impediments principally flow from the fact that Plaintiff possesses a felony history and, until recently, was serving an active prison sentence and/or on parole. *Id.* at 15, 18. In North Carolina, felons cannot register to vote unless their rights have been restored. *See id.* at 9, 15, 23. Only by registering to vote may an individual formally affiliate with a political party. *Id.* at 23. And, critically, in order to run for Congress as either a Democrat or Republican, North Carolina law requires that one must have been affiliated with that political party for 90 days prior to the candidacy filing period, which commences on December 4, 2023. *Id.* Accordingly, Plaintiff contends that North Carolina law imposes three additional (and unconstitutional) qualifications for those seeking a seat in Congress: (1) candidates must not be felons whose rights have not been restored; (2) candidates must be registered to vote; and (3) candidates must have been affiliated with their chosen political party for 90 days prior to the candidacy filing period. *See id.* at 2.

Plaintiff asserts that he "had all [his] rights restored" on September 3, 2023. *Id.* at 9. But apparently, after attempting to register to vote, he was "[d]enied . . . on account of him being an 'Active Felon.'" *Id.* As a result, Plaintiff contends that he will not have been affiliated with the Republican Party for 90 days by December 5, 2023. *See id.* at 23. This lack of affiliation will reportedly prevent his access to the ballot as a candidate. *See id.* at 24 (averring that "90 day requirement denies Ballot-Access").

Plaintiff alleges additional constitutional violations that arise through operation of the North Carolina elections code. For one, the candidacy form requires potential candidates to attest to their felony history, and allegedly "criminally penalize[es] those who refuse to attest and subsequently den[ies] ballot-access." *Id.* at 9. A candidate's answer to this question is not per se

2

disqualifying, but Plaintiff asserts that answering the question serves "no legitimate state interest," and the questions functions an "an indirect additional qualification." *Id.* at 32.

Furthermore, a filing fee of $1740 is imposed on all candidates. *Id.* at 36. Plaintiff argues he cannot pay this fee "due to indigency." *Id.* at 15, 36. As a result, Plaintiff argues that the fee operates as an "additional qualification[]" to run for Congress. *Id.* at 36.

Finally, by registering to vote (a prerequisite to running for Congress), Plaintiff's address is made a public record "online for the world to see." *Id.* at 40. This publication reportedly violates Plaintiff's right to privacy. *See id.* Plaintiff suggests that posting the address of voters online also has a "chilling effect" on would-be candidates for public office. *Id.* at 41.

Plaintiff initiated this action by filing the Complaint on September 14, 2023. *Id.* at 46. As relief, he seeks a declaration that fourteen state laws and two sections of North Carolina's Constitution violate the United States Constitution. *See id.* at 45. He also requests injunctive relief, namely that the court order Defendants "to adopt a new filing form" for congressional candidates that does not include any of the "qualifications" Plaintiff contends are unconstitutional. *Id.* Lastly, Plaintiff requests removal of all registered voters' addresses from North Carolina's voter database. *Id.*

The same day Plaintiff filed the Complaint, he also filed the Motion for Injunction. DE 4. The Motion for Injunction largely mirrors the Complaint, but adds that Plaintiff's claims satisfy the standard for preliminary injunctive relief. *Id.* at 5, 29-32. The Motion for Injunction also requests relief identical to the Complaint. *See id.* at 33.

Also on September 14, Plaintiff filed the Motion to Consolidate and Expedite. DE 5. That motion requests that the court "consolidate the hearing on Plaintiff's Motion for Preliminary Injunction with the trial on the merits of Plaintiff's Verified Complaint." *Id.* at 2 (internal citations

omitted). Plaintiff requests that such consolidation occur on an expedited basis, because otherwise "Plaintiff is off the ballot and cannot campaign," which would cause him "irreparable harm." *Id.*

Plaintiff next filed the Motion for Leave, on October 2, 2023. DE 25. The Motion for Leave requests that the court permit Plaintiff to "file a Reply Brief" and "Exceed the Word Count," after "Opposing Counsel fil[es] the Response [to the Motion for Injunction]." Plaintiff does not need leave of court to file a reply brief. *See* Local Civil Rule 7.1(g)(1). Moreover, Plaintiff requested leave to exceed the word count in his reply before Defendants filed a response to the Motion for Injunction. At the time he filed the Motion for Leave, then, Plaintiff could not have reasonably considered whether exceeding the word count would be necessary or appropriate. Accordingly, the court will deny as moot the Motion for Leave.

Three days later, Defendants filed the Motion to Dismiss (and supporting memorandum). DE 28; DE 29. Defendants first argue that the State should be dismissed from this action. *Id.* at 8. Plaintiff's claims arise under 28 U.S.C. § 1983, and Defendants aver that a State is not "a person" within the meaning of that statute. *Id.*

Next, Defendants concede that "the no-active-felon candidate qualification" and "the registered-voter requirement" are not constitutionally enforceable. DE 29 at 7 n.4. However, Defendants contend that these issues are now moot, since Plaintiff had his rights restored on September 3, 2023 and "became an active registered voter affiliated with the Republican party on September 5." *Id.* at 9-10. For that same reason, Defendants argue the 90-day party affiliation requirement is moot as to Plaintiff, because December 4, the first day of the candidacy filing period, is exactly 90 days after September 5. *See id.*

Defendants also assert that Plaintiff failed to sufficiently allege an injury stemming from the no active felon, active voter, and party affiliation requirements, in that his "allegations are

4

purely speculative," and he "has not filed a notice of candidacy with the State Board, much less had a notice of candidacy rejected by the Board." *Id.* at 12. Because the candidacy filing period has not yet commenced, Defendants likewise contend that the aforementioned issues are not ripe, since Plaintiff "has not actually filed a notice of candidacy, [and] no agency action has occurred, much less an adverse agency action that could give rise to injury." *Id.* at 14.

As for the question on the candidacy form requiring candidates to disclose their felony history, Defendants make several arguments. First, they argue that Plaintiff lacks standing. *Id.* at 12. Next, they contend the issue is not ripe. *Id.* at 14. Lastly, they describe the question as a "constitutional time, place, and manner restriction" and "constitutional ballot-access restriction," not an additional qualification. *Id.* at 24-27. According to Defendants, the state's interest in having an informed electorate warrants the question. *See id.*

Defendants next reject the notion that the filing fee operates as an additional qualification for candidates. *Id.* at 27. They point out that North Carolina law offers "a reasonable alternative." *Id.* at 28. In that regard, Plaintiff, in lieu of paying the filing fee, can "gather signatures from only five percent of registered voters" in his district and then notice his candidacy without paying the fee. *Id.* at 29.

Defendants also argue that publication of Plaintiff's address does not violate any Fourth Amendment right to privacy. *Id.* at 30. Per Defendants, one's address "is considered public record by virtue of" North Carolina law. *Id.* As for any chilling effect, Defendants observe that publication of Plaintiff's address on the State's voter database has apparently not dampened his zeal to run for Congress. *Id.*

Defendants also responded to the Motion for Injunction on October 5. DE 31. Defendants incorporate their arguments from the Motion to Dismiss into their response to the Motion for

5

Injunction. *Id.* at 3. In light of those arguments, Defendants contend that Plaintiff is unlikely to succeed on the merits of his claims, warranting denial of the motion. *See id.* Defendants also assert that the other considerations for preliminary injunctive relief weigh in favor of denying the motion. *Id.* at 4-7.

Several days later, on October 10, Defendants filed the Motion to Consolidate Rulings. DE 33; DE 34. Defendants note that Rule 65(a)(2) of the Federal Rules of Civil Procedure permits the court to "advance the ***trial*** on the merits and consolidate it with the ***hearing*** [on a preliminary injunction]." Fed. R. Civ. P. 65(a)(2) (emphases added). Defendants do not want the court to consolidate a trial with any hearing. DE 34 at 4. They only seek consolidation of the court's "consideration." *Id.* Defendants do not identify a Rule that authorizes their request. *See id.* Nonetheless, the court possesses inherent authority to manage its docket, including by consolidating rulings on matters that involve substantial similarity of factual and legal issues. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). The Motion for Injunction and Motion to Dismiss fit that rubric, so the court will consolidate its rulings, and deny as moot the Motion to Consolidate Rulings.

The last filing presently before the court is Plaintiff's "Emergency Motion" for a hearing on the Motion for Injunction, filed October 20. DE 38. In that Motion, Plaintiff notes that "the Court initiated Discovery," and, per that schedule, "there is no way a trial on the merit could begin before [December 4]." *Id.* at 1. According to Plaintiff, the court "has a complete open schedule" for several upcoming weeks, and a hearing is warranted to protect Plaintiff from "suffer[ing] irreparable harm." *Id.* at 1-2.

6

## II.  Legal Principles

### a.  Pleadings and Motions to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule does not require "detailed factual allegations," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), but the allegations must cross the threshold "between possibility and plausibility of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal brackets and quotation marks omitted). Put another way, although the *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, [the Rule] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the pleading and must draw all reasonable inferences in the plaintiff's favor. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). In that regard, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Further, when faced with a Rule 12(b)(6) motion to dismiss, the court typically limits its review to "the allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). Beyond those allegations, the court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

A complaint must also be dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Defendants may contest subject matter jurisdiction by motion, but courts also

"have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). "The plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). When considering a challenge to subject matter jurisdiction, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

      b. Justiciability

Intertwined with subject matter jurisdiction are considerations of justiciability. In that regard, federal courts may only decide "Cases" or "Controversies." U.S. CONST. art. III, § 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing entails three requirements: (1) the plaintiff must have suffered an "injury in fact" (i.e., one that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"); (2) the plaintiff's injury must be traceable to the challenged conduct of the defendant(s); and it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Although "similar to determining whether a party has standing," *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006), ripeness furthers a distinct purpose of "prevent[ing] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," as well as withholding "judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties," *Abbott Lab'ys v. Gardner*, 387 U.S.

8

136, 148–49 (1967). Put another way, ripeness ensures that courts only step in "when the action is final and not dependent on future uncertainties." *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) (internal quotation mark omitted). Ripeness involves evaluation of (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Abbott Labs*, 387 U.S. at 149.

Lastly, the doctrine of mootness "deprives federal courts of subject matter jurisdiction[] when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) (internal quotation marks omitted). Mootness must be considered "throughout the course of litigation." *Catawba Riverkeeper Found. v. N. Carolina Dep't of Transportation*, 843 F.3d 583, 588 (4th Cir. 2016). In that way, federal courts avoid resolving "an issue [that] could not possibly have any practical effect on the outcome of the matter." *Norfolk S. Ry Co. v. City Of Alexandria*, 608 F.3d 150, 161 (4th Cir. 2010); *see also Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1250 (10th Cir. 2009) (observing that mootness doctrine "holds true even if all the parties . . . still wish [the court] to render an opinion to satisfy their demand for vindication or curiosity about who's in the right and who's in the wrong" because the job of federal courts "is to decide cases that matter in the real world, not those that don't").

     c.  Preliminary Injunctions

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal quotation mark omitted). Accordingly, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555

9

U.S. 7, 20 (2008). Given the extraordinary and drastic nature of preliminary injunctions, "a district court is entitled to deny preliminary injunctive relief on the failure of any single *Winter* factor, without fully evaluating the remaining factors." *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023).

> d. Qualifications Clause

"[S]tates may not require U.S. House of Representative candidates to submit to any qualifications that are not listed in Article I, Section 2, Clause 2 or in Section 3 of the Fourteenth Amendment." *Sharma v. Circosta*, No. 5:22-CV-59, 2022 WL 19835738, at *3 (E.D.N.C. May 16, 2022), *motion for relief from judgment denied*, No. 5:22-CV-59-BO, 2023 WL 3437808 (E.D.N.C. May 11, 2023), *cert. denied before judgment*, No. 23-5011, 2023 WL 6379035 (U.S. Oct. 2, 2023). Those qualifications include that members of the House of Representatives must (1) be at least twenty-five years of age, (2) have been a United States citizen for at least seven years, and (3) be an inhabitant of the state they represent. U.S. CONST. art. I, § 2, cl. 2. Additionally, those who have previously sworn an oath to uphold the Constitution must not have subsequently engaged in an insurrection in violation of that oath. U.S. CONST. amend. XIV, § 3. "Allowing individual States to adopt their own qualifications for congressional service would be inconsistent with the Framers' vision of a uniform National Legislature representing the people of the United States." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 783 (1995).

However, not every requirement imposed on congressional candidates constitutes a qualification. *See Storer v. Brown*, 415 U.S. 724, 746 n.16 (1974). For example, disclosure requirements do not constitute qualifications because they "do not limit the choices of any particular group of voters." *Plante v. Gonzalez*, 575 F.2d 1119, 1127 (5th Cir. 1978). On the other

10

hand, compelled disclosures implicate First Amendment concerns, so they must "directly serve substantial governmental interests." *Buckley v. Valeo*, 424 U.S. 1, 68 (1976).

### e. North Carolina Candidacy Requirements

North Carolinians seeking a seat in Congress must comply with several (state) statutory provisions. Candidates must "file[] a notice of candidacy." N.C.G.S. § 163-106(a). Candidates must file these notices "no earlier than 12:00 noon on the first Monday in December and no later than 12:00 noon on the third Friday in December preceding the primary." N.C.G.S. § 163-106.2(a).

Candidacy notices must certify that the candidate is registered to vote. N.C.G.S. § 163-106(a). The notices must also include the candidate's party affiliation; however, "[n]o person shall be permitted to file as a candidate in a party primary unless that person has been affiliated with that party for at least 90 days as of the date of that person filing such notice of candidacy." N.C.G.S. § 163-106.1. And, to affiliate with a party, an individual must register to vote. *See* N.C.G.S. §§ 163-82.4(a)(9) & 82.4(d).

Candidates also must attach a statement to their candidacy notice form. The statement must "answer[] the following question: 'Have you ever been convicted of a felony?'" N.C.G.S. § 163-106(e). If that question yields an affirmative answer, the candidate must also "provide the name of the offense, the date of conviction, the date of the restoration of citizenship rights, and the county and state of conviction." *Id.* If a candidate does not answer the question, "the board of elections . . . shall notify the individual of the omission, and the individual shall have 48 hours after notice to complete the statement." *Id.* Failure to complete the statement within 48 hours after receiving notice from the board of elections renders the candidate's "filing [] not complete, [and as a result] the individual's name shall not appear on the ballot as a candidate, and votes for

that individual shall not be counted." *Id.* In addition, knowingly providing false information in response to the question "is a Class I felony." *Id.*

Filing a notice of candidacy requires payment of a fee, equal to "[o]ne percent (1%) of the annual salary of the office sought." N.C.G.S. § 163-107(a). A candidate may, "in lieu of payment of any filing fee required for the office he seeks, file a written petition requesting him to be a candidate for a specified office." N.C.G.S. § 163-107.1(a). This petition must "be signed by five percent (5%) of the registered voters of the election area in which the office will be voted for, [and] who are affiliated with the same political party in whose primary the candidate desires to run." N.C.G.S. § 163-107.1(c). The due date for the petition is the Monday preceding the filing deadline. *See id.*

## III. Analysis

### a. The State as Defendant

The Complaint (and Motion for Injunction) allege various constitutional violations and name the State of North Carolina as a Defendant. *See generally* DE 1; DE 4. Section 1983 makes actionable "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. But "Section 1983 claims must be raised against a 'person.'" *Conley v. Ryan*, 92 F. Supp. 3d 502, 519 (S.D.W. Va. 2015) (citing 42 U.S.C. § 1983). To that point, "Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties [because t]he Eleventh Amendment bars such suits unless the State has waived its immunity." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

Plaintiff, in responding to the Motion to Dismiss, contends that the State is a proper Defendant because Plaintiff is seeking injunctive relief pursuant to *Ex parte Young*, 209 U.S. 123 (1908). DE 36 at 14. "*Ex parte Young*, however, allows private citizens, in proper cases, to petition

12

a federal court to enjoin State ***officials*** in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Franks v. Ross*, 313 F.3d 184, 197 (4th Cir. 2002) (emphasis added). *Ex parte Young* does not authorize claims against the state itself or circumvent sovereign immunity. Dismissal of the State of North Carolina as a Defendant from this matter is warranted.

### b. The "Active Felon" Prohibition

Plaintiff argues that North Carolina's prohibition on felons whose rights have not been restored from running for Congress represents an unconstitutional qualification in violation of Article I, Section 2, Clause 2 of the United States Constitution. DE 1 at 2. To review, North Carolina law bars felons whose rights have not been restored from voting. *See* N.C. Const. art. VI, § 2(3). Unless a candidate registers to vote, that candidate cannot affiliate with a political party. N.C.G.S. §§ 163-82.4(a)(9) & 82.4(d). Absent party affiliation (for 90 days preceding the candidacy notice filing period), a candidate may not file as a candidate in that party's primary. N.C.G.S. § 163-106.1.

The court finds that this aspect of the Complaint (and Motion for Injunction) is not ripe for judicial resolution. A matter is only ripe "when the action in controversy is final and not dependent on future uncertainties." *Miller*, 462 F.3d at 319. This issue is not final, and it depends on future uncertainties. Plaintiff has not yet filed his candidacy notice, and indeed cannot do so before December 4. *See* N.C.G.S. § 163-106.2(a).

More importantly, the North Carolina Board of Elections has not acted upon any notice of candidacy filed by Plaintiff. Thus, there is no adverse agency action for the court to review. *See, e.g.*, *McNeill v. Lynch*, No. 5:16-CV-832, 2017 WL 2312231, at *3 (E.D.N.C. May 24, 2017) (dismissing claim as unripe where plaintiff alleged he would be denied relief if he went through

13

state process but had not yet availed himself of said process); *Tammy W. v. Hardy*, 681 F. Supp. 2d 732, 736 (S.D.W. Va. 2010) (finding that, even where agency has stated its intent to terminate benefits, issue was not ripe until termination of benefits occurred); *Sigram Schindler Beteiligungsgesellschaft MBH v. Kappos*, 675 F. Supp. 2d 629, 638 (E.D. Va. 2009) (holding that claim is not ripe when it "is wholly contingent on an event that may never materialize, namely an adverse [agency] decision"). As a result, the issue is not fit "for judicial decision." *Abbott Labs*, 387 U.S. at 149.

The second *Abbott Labs* factor, "the hardship to the parties of withholding court consideration," also supports a finding that the issue is not ripe. *See id.* Evaluating hardship entails considering "the immediacy of the threat and the burden imposed" on the party seeking court intervention. *Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203, 209 (4th Cir. 1992). On this point, the court agrees with Judge Boyle's assessment when considering a similar challenge brought by Plaintiff last year, that "[n]othing currently prevents plaintiff from filing a notice of candidacy in the general election." *Sharma*, 2022 WL 19835738, at *5.

Put another way, the prohibition Plaintiff challenges "does not affect [his] primary conduct." *National Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 810 (2003) (finding no hardship where challenged regulation left party "free to conduct its business as it sees fit"). The provision Plaintiff seeks to invalidate "does not require [him] to do anything or to refrain from doing anything." *Trump v. New York*, 141 S. Ct. 530, 536 (2020) (internal quotation mark omitted). Because Plaintiff remains free to file a candidacy notice, he would suffer no hardship as a result of the court withholding consideration. *See Abbott Labs*, 387 U.S. at 149.

The court further observes that the parties appear to agree that, although Plaintiff is a felon, his rights have been restored. *Compare* DE 1 at 9, 15, 32 (noting restoration of rights on September

14

3), *with* DE 30 at 4 (declaration indicating that "Plaintiff's rights of citizenship had been restored as of September 3"). Defendants have therefore argued that this issue is moot. DE 29 at 9-11.

The court disagrees, albeit with the caveat that this issue likely will be moot as of December 4. Nevertheless, Plaintiff's status as a felon whose rights have been restored may change between now and then. As such, the potential application of North Carolina's active felon prohibition against Plaintiff "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation mark omitted). Consequently, ripeness, not mootness, supports the court refraining from premature adjudication of this aspect of the Complaint and the Motion for Injunction.

### c. The "Active Voter" Requirement

Largely the same reasoning underlies the court's conclusion that North Carolina's active voter requirement is also not ripe for judicial review. As explained previously, candidacy notices must certify that the candidate is registered to vote. N.C.G.S. § 163-106(a). If a candidacy notice lacks that certification, the Board of Elections will cancel the notice. N.C.G.S. § 163-106.5(b).

Plaintiff has not filed a candidacy notice. He cannot do so until December 4. N.C.G.S. § 163-106.2(a). And the Board of Elections has not acted upon any candidacy notice filed by Plaintiff.

As a result, the issue is not ripe. There is no agency action to review, and any future agency action depends "on future uncertainties." *Miller*, 462 F.3d at 319; *see also Tammy W.*, 681 F. Supp. 2d at 736. In addition, withholding consideration of this issue would result in no immediate hardship to Plaintiff, because the challenged law does not regulate primary conduct. *See National Park Hospital*, 538 U.S. at 810. In that regard, Plaintiff retains the ability to file a candidacy

15

Case 5:23-cv-00506-M-BM   Document 43   Filed 10/30/23   Page 15 of 28

notice. Taken together, these considerations support the court refraining from premature adjudication of the active voter requirement. *See Abbott Labs*, 387 U.S. at 149.

          d.  The "Party Affiliation" Requirement

The court similarly concludes that Plaintiff's challenge to the party affiliation requirement is not ripe. To review, candidacy notices must include the candidate's party affiliation; however, "[n]o person shall be permitted to file as a candidate in a party primary unless that person has been affiliated with that party for at least 90 days as of the date of that person filing such notice of candidacy." N.C.G.S. § 163-106.1. But Plaintiff has not filed a candidacy notice, cannot do so until December 4, and has not suffered any adverse agency action.

Accordingly, the party affiliation issue is not ripe. The Board of Elections has not acted, and any future action depends "on future uncertainties," *Miller*, 462 F.3d at 319, as well as "contingent future events that may not occur as anticipated, or [] may not occur at all," *Texas*, 523 U.S. at 300; *see also Tammy W.*, 681 F. Supp. 2d at 736. Further, withholding consideration of this issue would result in no immediate hardship to Plaintiff because the challenged law does not regulate his primary conduct. *See National Park Hospital*, 538 U.S. at 810. Plaintiff remains free to file a candidacy notice. *See Trump*, 141 S. Ct. at 536. The foregoing considerations warrant the court's avoidance of premature adjudication of the party affiliation requirement. *See Abbott Labs*, 387 U.S. at 149.

On this particular issue, the court notes some factual dispute in the record. Plaintiff alleges that, notwithstanding the restoration of his rights on September 3, his voter registration was denied by letter dated September 11. DE 1 at 9; DE 1-1 at 7. Defendants respond that Plaintiff became an active registered voter on September 5. DE 29 at 10. Defendants add that a clerical error resulted in Plaintiff receiving the letter on September 11 that stated his voter registration had been

canceled. *Id.*; *see also* DE 30 at 4; DE 1-1 at 15. Defendants further certify that Plaintiff's voter registration, and affiliation with the Republican party, was effective as of September 5. DE 30 at 3-4.

This dispute is important because it bears on whether Plaintiff will be able to satisfy the 90-day party affiliation requirement when the candidacy filing period begins on December 4. The court has considered all the evidence on Plaintiff's voter registration and party affiliation status, as it is authorized to do, *see Richmond, Fredericksburg & Potomac*, 945 F.2d at 768, and concludes that Plaintiff's voter registration, and party affiliation, were effective as of September 5. As a result, the court notes that the party affiliation issue may well be moot by December 4, at which point Plaintiff will have been affiliated with his party of choice for exactly 90 days. But for now, considerations of ripeness, not mootness, militate in favor of the court refraining from premature adjudication of this aspect of the Complaint and the Motion for Injunction.

e. The "Felony History" Disclosure

Plaintiff's challenge to the felony history question on the candidacy notice form stands on different doctrinal footing than the prior three issues because his potential noncompliance would subject him to criminal prosecution. *See* N.C.G.S. § 163-106(e). "When an individual is subject to [threatened enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Here, if Plaintiff provides false information in response to the felony history question, he commits a Class I felony. *See* N.C.G.S. § 163-106(e).

The court will consider standing and ripeness in tandem for this issue, because "in practice there is an obvious overlap between th[ose] doctrines." *Miller*, 462 F.3d at 319 (citing ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.4 (4th ed. 2003)). To establish standing, Plaintiff must

allege an (1) injury in fact that is (2) traceable to Defendants' challenged conduct and (3) redressable by a favorable decision. *See Lujan*, 504 U.S. at 560–61. He has done so.

In this context, an injury in fact requires allegations of "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [where] there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). Because Plaintiff proceeds pro se, his allegations are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Plaintiff has alleged an intention to engage in conduct affected with a constitutional interest but proscribed by statute. *See Babbitt*, 442 U.S. at 298. The Complaint explains his concern that if he "doesn't sign the form, attesting to a felony conviction, he commits a Class I Felony and then won't be on the ballot." DE 1 at 32. In addition, Plaintiff asserts that the statute in question will "force[ him] to sign that he has, in his lifetime, been convicted of a felony and if not he will not be on the ballot." *Id.* He further states that what "is clear is that if [he] checkmarks that he has not been convicted of a felony he commits an I Class felony." *Id.* at 33; *see also* DE 4 at 27-29; DE 36 at 27-28. Although Plaintiff does not explicitly state that he intends not to answer the question truthfully, or at all, his allegations demonstrate his belief that he should not be forced to answer the question truthfully. Liberally construed, those allegations sufficiently set forth an intention to engage in conduct affected with a constitutional interest but proscribed by statute. *See Erickson*, 551 U.S. at 94.

Furthermore, Plaintiff's noncompliance with N.C.G.S. § 163-106(e) raises a credible threat of prosecution thereunder. *See Babbitt*, 442 U.S. at 298. North Carolina law requires the Board of Elections to inspect the notice to ensure it complies with all statutory requirements. *See* N.C.G.S. §§ 163-106(e) & 163-106.5(b). As Plaintiff alleges, "[t]here is no reason to believe the

18

State/Defendants will not enforce its own laws." DE 1 at 33-34; *see also Holder v. Humanitarian L. Project*, 561 U.S. 1, 16 (2010) (finding credible threat of enforcement where government declined to disavow prosecution of conduct). Defendants here have not suggested they would decline to prosecute Plaintiff should he not truthfully answer the felony history question, nor would the court find persuasive any contention that "the state will not enforce its own laws." *Sharma*, 2022 WL 19835738, at *4. As a result, Plaintiff has sufficiently alleged an injury in fact.

Defendants failed to raise any argument that Plaintiff's injury is not traceable to their conduct or redressable. *See* DE 29 at 9-11 (contending only that Plaintiff failed to allege an injury). Even so, standing implicates subject matter jurisdiction, so the court must independently evaluate the latter two elements of standing. *See Arbaugh*, 546 U.S. at 514. Those elements are met here.

Plaintiff's injury is the threat of criminal prosecution resulting from his failure to answer truthfully a question he does not believe the State can compel him to answer. That injury may only occur by virtue of the Board of Elections reviewing Plaintiff's notice of candidacy and referring him for prosecution. His injury is therefore traceable to Defendants' conduct.

Plaintiff's injury is also redressable by a favorable opinion. He requests a new candidacy notice form that does not include the felony history question. DE 1 at 45. That relief, or other injunctive relief, would ensure avoidance of prosecution. His injury is therefore redressable.

Turning from standing to ripeness, this particular issue is ripe for judicial determination because it presents a purely legal question. *See Abbott Labs*, 387 U.S. at 149. Moreover, Plaintiff would suffer hardship from the court withholding its consideration. *See id.* Deferring judicial review until the candidacy filing period has commenced would put Plaintiff in the position of exposing himself to criminal liability; however, such exposure is not a prerequisite to challenging a law that imposes criminal sanctions. *See Susan B. Anthony List*, 573 U.S. at 158.

19

To be sure, when the candidacy filing period begins, Plaintiff could instead choose to answer the question truthfully. With that in mind, resolution of this issue arguably "depend[s] on future uncertainties." *South Carolina*, 912 F.3d at 730. But the court has to weigh that future uncertainty against the allegations in the Complaint, which plausibly allege that Plaintiff intends not to answer the felony history question truthfully, or at all. *See* DE 1 at 32-33. On balance, this issue is justiciable.

Having concluded that no doctrine of justiciability weighs against the court reaching the merits of this claim, the court must next determine whether the challenged question represents a "qualification" within the meaning of Article II, Section 2, Clause 2. If the question constitutes a qualification, it will not pass constitutional muster. *See Term Limits*, 514 U.S. at 783.

Plaintiff contends the question operates as "an indirect additional qualification." DE 1 at 32. That contention lacks merit. As the Supreme Court explained in *Term Limits*, a particular requirement does not constitute a qualification unless its operation would "render[] a class of potential candidates ineligible for ballot position." *Term Limits*, 514 U.S. at 835. An affirmative or negative answer to the question in N.C.G.S. § 163-106(e), so long as it is truthful, would not render any candidate ineligible for ballot position.

Put another way, the felony history question does not "limit the choices of any particular group of voters." *Plante*, 575 F.2d at 1127. Voters may vote for a candidate who answers "yes." They may vote for a candidate who answers "no." The question "no more establishes an additional requirement for [Congress] than the requirement that the candidate win the primary to secure a place on the general ballot." *Storer*, 415 U.S. at 746 n.16.

As *Storer* demonstrates, creative litigants can rebrand almost any procedural requirement to running for office as a "qualification." But reading that term so broadly would nullify a state's

authority to prescribe the "Times, Places and Manner of holding Elections." U.S. CONST. art. I, § 4, cl. 1. Such a broad reading is improper. Accordingly, the court finds that the felony history question represents a disclosure requirement, not a qualification.

Even if not a qualification, a compelled disclosure in the electoral context still implicates First Amendment concerns. As a result, disclosure of the information must "directly serve substantial governmental interests." *Buckley*, 424 U.S. at 68. Those interests must be considered in the context of "the burden that [the disclosure requirement] place[s] on individual rights." *Id.*; *see also John Doe No. 1 v. Reed*, 561 U.S. 186, 196 (2010) (explaining that First Amendment challenges to disclosure requirements in electoral context involve review under "exacting scrutiny," which requires "substantial relation" between requirement and "sufficiently important" government interest); *Buckley*, 424 U.S. at 65 (noting that "[t]his type of scrutiny is necessary even if any deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct in requiring disclosure").

Requiring congressional candidates to attest to their felony history directly serves the State's substantial interest in fostering an informed electorate. "In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation." *Buckley*, 424 U.S. at 14–15. As the Fourth Circuit has recognized, electoral disclosure laws "actually promote speech by making more information available to the public and thereby bolstering the marketplace of ideas." *Master Printers of Am. v. Donovan*, 751 F.2d 700, 710 (4th Cir. 1984) (internal quotation mark omitted); *see also Washington Post v. McManus*, 944 F.3d 506, 516 (4th Cir. 2019) (observing that "disclosure obligations are ordinarily less detrimental

21

to our commitments to free speech because they do not *necessarily* censor speech") (italics in original). Constituents should and do expect commitment to the rule of law from their representatives. A disclosure designed to probe the strength of that commitment, and consequently inform the electorate of the same, directly serves that State interest.

Moreover, the felony history disclosure requirement imposes only a modest burden, if any, on candidates. *See Buckley*, 424 U.S. at 68. One's felony history is a matter of public record. *See* N.C.G.S. § 132-1(a). Therefore, unlike the vast majority of First Amendment challenges to electoral disclosure laws, N.C.G.S. § 163-106(e) does not require candidates to disclose any private or previously non-public information. *See, e.g.*, *Buckley*, 424 U.S. at 64; *National Ass'n of Mfrs. v. Taylor*, 582 F.3d 1, 20 (D.C. Cir. 2009); *Plante*, 575 F.2d at 1130. This characteristic of the law weighs heavily in favor of finding that it does not impose any serious burden on candidates.

Plaintiff's primary grievance with the compelled disclosure appears to stem from a desire to conceal his felony record from the voting public. *See* DE 1 at 32 (asserting that State has no interest in "finding about people's *past* affairs") (italics in original), 32 (likening question to "as[ing] 'Are you White?' or 'Are you Black?' etc."), 34 (stating that "[i]f [he] lived in Virginia or Florida he wouldn't be having this problem"); DE 36 at 28 (positing that disclosing his felony record "would actually confuse voters and allow them to vote on prejudice"); 28 (hypothesizing that disclosure "would unfairly influence the voters to believe Plaintiff would commit crimes in the future or that Plaintiff is of bad character"). This grievance is unpersuasive, both because Plaintiff's felony record is already public record, and because concealment would undermine "the ability of the citizenry to make informed choices among candidates for office." *Buckley*, 424 U.S. at 14–15.

In sum, the compelled disclosure of a candidate's felony history is a constitutional ballot-access measure that directly serves North Carolina's substantial interest in fostering an informed electorate.

      f.   The Filing Fee

Plaintiff also challenges the $1740 filing fee, which he alleges he cannot pay. DE 1 at 15. Defendants respond that a reasonable alternative is available to Plaintiff. DE 27 at 29. Specifically, North Carolina law permits a candidate, "in lieu of payment of any filing fee required for the office he seeks, [to] file a written petition requesting him to be a candidate for a specified office." N.C.G.S. § 163-107.1(a). This petition must "be signed by five percent (5%) of the registered voters of the election area in which the office will be voted for, [and] who are affiliated with the same political party in whose primary the candidate desires to run." N.C.G.S. § 163-107.1(c).

Plaintiff makes two arguments in response to the alternative path to the ballot, albeit in different filings. First, in his response to the Motion to Dismiss, he argues that obtaining signatures from 5% of registered republicans in the Thirteenth Congressional District is too onerous. DE 36 at 30. Then, in his Emergency Motion, Plaintiff contends that the congressional "maps are still changing," so he cannot reasonably attempt to procure signatures until that process is finalized. DE 38 at 2.[2]

Plaintiff's first argument is conclusory. The Supreme Court has observed that "[a] procedure inviting or permitting every citizen to present himself to the voters on the ballot without some means of measuring the seriousness of the candidate's desire and motivation would make rational voter choices more difficult because of the size of the ballot and hence would tend to

---

[2] Given its pertinence to this issue, the court will consider this latter contention in its analysis.

23

impede the electoral process." *Lubin v. Panish*, 415 U.S. 709, 715 (1974). As a result, states may enact reasonable measures to limit ballot access to only serious candidates, including filing fees. *See id.* at 718-19 (stating that states must provide "alternative means" so as to avoid excluding "candidates solely on the basis of [their in]ability to pay a fixed fee"). Federal courts have regularly upheld similar[3] signature-collection ballot restrictions to that prescribed by North Carolina law. *See, e.g., American Party of Texas v. White*, 415 U.S. 767, 789 (1974) ("Demanding signatures equal in number to 3% or 5% of the vote in the last election is not invalid on its face"); *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (upholding law requiring signatures of 5% of all registered voters); *Cartwright v. Barnes*, 304 F.3d 1138, 1144 (11th Cir. 2002) (same); *Swanson v. Worley*, 490 F.3d 894, 903 (11th Cir. 2007) (finding 3% signature requirement to be "reasonable, nondiscriminatory restriction").

Plaintiff argues that the 5% signature requirement is too onerous because he "would have to get at least 6,000 signatures . . . [and in the] 2022 midterms some candidates only received less than 1,000 votes." DE 36 at 30. "This comparison is unavailing because it essentially asks [the court] to compare apples to oranges." *Buscemi v. Bell*, 964 F.3d 252, 265 (4th Cir. 2020) (rejecting challenge to North Carolina's signature requirement for unaffiliated candidates). Midterm elections are not general elections, and signatures are not votes.

Plaintiff's second argument, that the congressional maps are in flux, is now moot. North Carolina's congressional map passed the State House and Senate on October 25, 2023, and became immediately effective. *See Senate Bill 757 / SL 2023-145*, NORTH CAROLINA GENERAL

---

[3] These cases are not identical, because they involve signature-collection ballot restrictions for independent or unaffiliated candidates to appear on general election ballots. Even so, they are sufficiently similar to support a finding that North Carolina's law passes constitutional muster. Arguably, the restriction on Plaintiff is less onerous than that imposed on unaffiliated candidates, since he already shares a party affiliation with the individuals whose signatures he must procure.

24

ASSEMBLY, available at https://www.ncleg.gov/BillLookUp/2023/S757, (last visited October 27, 2023).[4] Accordingly, the court finds that North Carolina law provides Plaintiff with an alternative ballot access measure to the filing fee, and that this alternative is reasonably available to him. His argument that the filing fee is unconstitutional therefore fails to state a claim upon which relief may be granted.

### g. Candidate and/or Voter Address Disclosure

Lastly, Plaintiff contends that his Fourth Amendment right to privacy was violated when Defendants publicly listed his address after he registered to vote. DE 1 at 40-41. This contention is meritless.

As an initial matter, the Fourth Amendment right to privacy, which Plaintiff cites, safeguards citizens from "unreasonable searches and seizures." U.S. CONST. amend. IV. It has no bearing on Plaintiff's allegation that, after registering to vote, Defendants made his address available "online for the world to see." DE 1 at 40.

Even if the court liberally construed the Complaint to instead raise a Fourteenth Amendment right to privacy claim, Plaintiff would fare no better. This constitutional right to privacy has long been recognized. *Meyer v. Nebraska*, 262 U.S. 390, 403 (1923). It in part serves "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977).

However, this "right to privacy protects only information with respect to which the individual has a reasonable expectation of privacy." *Walls v. City of Petersburg*, 895 F.2d 188, 193 (4th Cir. 1990). Its boundaries, therefore, necessarily exclude "information [] freely available in public records." *Id.* Plaintiff's address is a public record. *See* N.C.G.S. § 132-1(a).

---

[4] The court takes judicial notice of this fact. *See Tellabs, Inc.*, 551 U.S. at 322.

Therefore, no constitutional right to privacy extends to "an individual's address." *Cunningham v. U.S. Veterans Affs.*, No. 7:08-CV-00485, 2008 WL 3926452, at \*2 (W.D. Va. Aug. 26, 2008). Ultimately, "[t]he question is not whether [Plaintiff] regard[s the] information . . . as private, . . . but whether the Constitution protects such information." *Adams v. Drew*, 906 F. Supp. 1050, 1057 (E.D. Va. 1995). It does not. *See DM v. Louisa Cnty. Dep't of Hum. Servs.*, 194 F. Supp. 3d 504, 508–09 (W.D. Va. 2016) (finding no right to privacy in "personal contact information," such as one's address). Plaintiff fails to state a right to privacy claim upon which relief may be granted.[5]

### h. Preliminary Injunctive Relief

The foregoing analysis demonstrates that Plaintiff is not entitled to any relief: three of his claims are not ripe, and the other two fail to state a claim upon which relief may be granted. As a result, Plaintiff has not "establish[ed] that he is likely to succeed on the merits." *Winter*, 555 U.S. at 20. This "court is entitled to deny preliminary injunctive relief on the failure of any single *Winter* factor, without fully evaluating the remaining factors." *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023). Even so, the court will consider the remaining *Winter* factors.

As for the second factor, "irreparable harm is inseparably linked to the likelihood of success on the merits." *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave*, 553 F.3d 292, 298 (4th Cir. 2009) (internal quotation marks omitted). A plaintiff not likely to succeed on the merits is not likely to suffer irreparable harm, and, to justify a preliminary injunction, a plaintiff "must make a clear showing of irreparable harm." *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 283 (4th Cir. 2002) (internal quotation marks omitted). Plaintiff has failed to do so here.

---

[5] To the extent Plaintiff has alleged that the publication of voters' addresses has a chilling effect that disincentivizes political candidates from running for office, he lacks standing to bring such a claim. *See Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 655 (4th Cir. 2019) (holding that injury must not be "common to all members of the public").

Next, the balance of equities supports withholding injunctive relief. As previously noted, the candidacy filing period does not commence until December 4. Plaintiff currently remains free to campaign and file a notice of candidacy. At present, no factual or legal encumbrance prevents Plaintiff from pursuing his political aspirations. On the other hand, enjoining North Carolina (through its public officials) from enforcing its election code would constitute "a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers); *see also L. v. Gast*, 641 F. Supp. 3d 580, 604 (S.D. Iowa 2022) (concluding that "[e]njoining [state election] law would create an irreparable injury to the State [] because it could no longer be able to enforce this duly enacted law"), *appeal dismissed sub nom. Rachel Raak L. v. Gast*, No. 22-3479, 2023 WL 3704920 (8th Cir. Jan. 6, 2023). Such injury is unwarranted in light of the court's finding that Plaintiff is not likely to succeed on the merits or suffer irreparable injury.

Lastly, the public interest weighs in favor of Defendants. "[I]t is in the public interest to uphold the will of the people, as expressed by acts of the state legislature, when such acts appear harmonious with the Constitution." *Pavek v. Donald J. Trump for President, Inc.*, 967 F.3d 905, 909 (8th Cir. 2020). The public has an interest in the orderly administration of elections. In the absence of some showing of constitutional transgression, the court will not disregard that interest or disrupt that orderly administration.

    i.   Hearing

"Rule 65 does not expressly require an evidentiary hearing and oral argument." *North Carolina Green Party v. N. Carolina State Bd. of Elections*, 619 F. Supp. 3d 547, 563 (E.D.N.C. 2022), *dismissed*, No. 22-1830, 2022 WL 18586807 (4th Cir. Aug. 30, 2022). "[A]n evidentiary hearing is not an indispensable requirement," but it may be desirable "where issues of fact are

disputed." *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893 (1st Cir. 1988). Ultimately, in the absence of any requirement, the court retains discretion to hear a motion. *See* Local Civil Rule 7.1(j).

This dispute involves purely questions of law. In fact, the parties have "agree[d] that no discovery is necessary and, therefore, are not proposing a discovery plan." DE 40 at 1. The parties have had ample time to make written submissions, and all relevant "evidence [is] already in the [] court's possession." *Syntex Ophthalmics, Inc. v. Tsuetaki*, 701 F.2d 677, 682 (7th Cir. 1983). Convening a hearing for the parties to restate arguments they have already made in their briefs would be a poor use of judicial resources and would not aid in the court's decisional process.

## IV. Conclusion

Plaintiff's "no active felon," "active voter," and "party affiliation" claims are not ripe. His felony disclosure and right to privacy claims fail as a matter of law. He also has not shown any irreparable injury, and the balance of equities and public interest support denying injunctive relief. For those reasons, the Motion to Dismiss [DE 28] is GRANTED and the Motion for Injunction [DE 4] is DENIED. Further, the Motion to Consolidate and Expedite [DE 5] is accordingly DENIED AS MOOT, the Motion for Leave [DE 25] is DENIED AS MOOT, the Motion to Consolidate Rulings [DE 33] is DENIED AS MOOT, and the Emergency Motion [DE 38] is DENIED. The Complaint [DE 1] is DISMISSED WITHOUT PREJUDICE as to the "no active felon," "active voter," and "party affiliation" claims and DISMISSED WITH PREJUDICE as to the felony disclosure and right to privacy claims.

SO ORDERED this 29th day of October, 2023.

*Richard E Myers II*

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

28